State vs. Gilkie.

## No. 8648.

### THE STATE OF LOUISIANA VS. LOUIS GILKIE.

An indictment is not vicious for duplicity because two distinct offences are charged therein, provided they be in separate counts, nor is it even necessary that they be of the same class of offences if charged in separate counts.

The Judge can direct a jury to reconsider their verdict before it is recorded, if satisfied that a palpable mistake has been made, provided in so doing there is no attempt to influence the jury, or to direct them beyond aiding them to put in form what they have found.

A conviction of a less offence than that charged in the indictment, both being of the same generic class, is expressly authorized by our law. And therefore a conviction of inflicting a wound less than mayhem with a dangerous weapon or with intent to kill, denounced as a crime by Sec. 794, Rev. Stats., is legal and regular under an indictment for cutting with a dangerous weapon with intent to commit murder, under Sec. 791.

APPEAL from the Sixth District Court, Parish of Morehouse: *Brigham, J.*

---

*J. C. Egan*, Attorney General, for the State, Appellee:

1 Two distinct felonies may be laid in different counts in the same indictment. Bishop on Crim. Procedure, vol. 1, Secs. 450 and 451 and authorities there cited.

2. The court charges the jury properly when it recites the minor offenses embraced in the graver offense set forth in the indictment, and informs them that they may bring in a verdict of guilty as to any one of said described offenses. 23 An. 326; 30 An. 313; 23 An. 434.

3. The court has a right to direct the jury to reconsider their verdict before it is recorded, and it is its duty to do so when satisfied that there has been a palpable mistake. 3 Parker, 552; Proffatt on Jury Trials, Sec. 459.

4. Cutting and thrusting are sometimes used indiscriminately.

*Newton & Hall* for Defendant and Appellant:

On trial under an indictment for cutting another with intent to commit murder, not lying in wait, etc., the court should have given these charges to the jury, counsel for accused having so requested:

1. "That to convict the accused of the charge in the indictment, the jury must be satisfied that had death ensued it would have been murder, and if the offense (if any) be such that had death ensued, it would not have been murder, the jury should acquit." Roscoe Cr. Evd., 785, 787; 1 Archibald, 884, 884.

2. "That if the jury find that the accused cut the prosecutrix and that it was done in a sudden affray or in sudden heat and passion without previous malice, that they cannot find accused guilty of the offense charged in the indictment." 1 Archibald, 884, 888.

Under an indictment for cutting another with intent to commit murder, not lying in wait, etc., the Judge should not have charged the jury that they might find accused guilty of other and distinct statutory offenses.

After the jury has returned its verdict, that verdict has been read by the clerk to them, and assented to in open court, it is improper and illegal for the Judge to question the jury as to their intention in the finding of that verdict, to intimate to them what verdict they should render, and to again give them a charge and retire them to their room for further deliberation, and permit another and a different verdict rendered. 30 An. 951, 952, 953, 954; 30 An. 921; 11 An. 395.

There is no such offense known to our statutes as "cutting with intent to commit murder, not lying in wait," etc. Revised Statutes, Sec. 791; Sedgwick on Construction of Statutes, 235.

The opinion of the Court was delivered by

MANNING, J. From a sentence of imprisonment at hard labor for two years the defendant appeals. The indictment contained two counts: 1, for inflicting wounds upon and cutting Elvira Gilkie with a dangerous weapon with intent to murder, not lying in wait, etc.; 2, for same acts committed upon Hadley Hess with intent to inflict wounds less than mayhem. Rev. Stats. Sec. 791.

There was a motion to quash for duplicity, in that two distinct offences with different penalties are charged in the same indictment. The motion was properly overruled. Each offense was laid in a separate count. State vs. Depass, 31 Ann. 487, where the point is treated at length. State vs. Prosser, Cheeres, 103; Cash vs. State, 10 Humph. 111. No complaint could be made if the ruling was error, since the State offered to enter a *nol. pros.* on the second count, and on the defendant objecting, and insisting on a verdict, the jury returned a verdict on that count instanter.

Exception was made to the refusal of the Judge to charge, " if the offence be such that had death ensused, it would not have been murder, the jury should acquit." The jury have the power, and it is their duty, to find a prisoner guilty of a less offence than that charged, if the evidence does not warrant a conviction of the greater, and therefore to tell them they were bound to acquit under those circumstances would be error. The cases cited by defendant's counsel are under a system which does not permit, or did not when they were decided, a verdict for a minor offence included in a charge of a graver one of same class. The same reason applies to the refusal to unqualifiedly charge " if the jury find that the accused cut Elvira Gilkie in a sudden affray in heat and passion without previous malice, they cannot find him guilty of the offence charged." The charge was given with the qualification that they might return a verdict of guilty for a less offence than that charged.

The jury returned a verdict in these words: " we, the jury, find the accused guilty of an assault with a deadly weapon with intent to kill." The Judge, thinking the verdict was not responsive to the charge, asked the jurors if they intended to find that the accused had inflicted no wound on the woman alleged to have been cut. The foreman replied the intention of the jury was to find the accused guilty of the offence, next highest in grade after that charged. The court informed them they had not done that by the verdict rendered, when all of them expressed a desire to render a verdict such as the foreman had stated. They were polled and each repeated what had already been said. The Judge informed them they had a right to correct their verdict so as to make it conform to their finding. The jury retired, and

on reappearing rendered the following verdict: "we, the jury, find the accused guilty of making an assault with a dangerous weapon with intent to kill, inflicting wounds less than mayhem," to all of which exception was taken.

There was manifestly no attempt by the Judge to influence the verdict, but only to assist the jury in putting in form what they had found. A justly esteemed authority in criminal prosecutions has held that the court has a right to direct the jury to reconsider their verdict before it is recorded, and it is its duty to do so when satisfied there has been a palpable mistake.    People vs. Bush, 3 Parker, 552.    The Judge may require the jury to pass upon the indictment in such form of words as shall constitute a sufficient finding in point of law.    Proffat Jury Trials, Sec. 459.

Wharton says: Until the jury are discharged the verdict may be amended.    If there is any informality, uncertainty, or impropriety about a verdict, the court may require the jury to amend it before they separate.    Even where a verdict of "not guilty" was pronounced by one of the jurors, which was entered by the clerk in the minute book and the prisoner discharged, it was held that upon it appearing that the verdict the jury intended was "guilty," the record could be legally amended, the verdict guilty recorded, and the prisoner committed.    3 Wharton Crim. Law, § 3195.

The Judge in the case at bar did not go as far as these authorities warrant, nor do we mean by citing them to entirely approve all of what was there said.    He did not direct them at all, nor require them to do anything, but simply enabled them to do what they wanted, but did not know how to do until instructed.    Judges cannot shut their eyes to the fact that the modern composition of juries with us is not a guarantee of intelligence, and it is of every day observation that many of those who are by law declared competent jurors are incompetent to understand a verdict of more than two words, and would be staggered if required to frame a longer one.    While we should promptly check an inferior Judge in an attempt to influence or direct a jury improperly, we must not hinder his efforts to enlighten them when he does not go beyond the bounds permitted by law.

Arrest of judgment was moved on the ground that the indictment does not charge an offence known to the laws of this State in this, that the charge is for *cutting* with a dangerous weapon while the statute makes penal only shooting, stabbing, or thrusting with, etc.    It is argued that this section of the criminal law has undergone legislative construction, and the omission of the word "cut" has been impliedly declared material by an amendment inserting that word.    The legislature did amend Sec. 790 by inserting "cut, strike," along with "shoot,

stab, and thrust," and singular enough, did not amend Sec. 791, which has the same verbiage, and needed it as much. Acts 1882, p. 40.

It is also urged that the distinction between the words cut and stab was observed in an early case by this Court, where authority was cited for holding that an indictment for cutting was not supported by evidence of stabbing. State vs. Patza, 3 Ann. 514.

Great and beneficial changes have been made in criminal pleading and practice since that decision, not the least important of which is the legalization of a verdict of an offence not charged in the indictment, provided it be less in magnitude and of the same generic class. State vs. Ford, 30 Ann. 313.

The gravamen of the charge is the wounding with a dangerous weapon with criminal intent, and the manner of using the weapon ought to be of minor importance. It would be a reproach if, by our law, stabbing one to death was punishable and cutting one to death was not, and it would be a return to those niceties of construction which the lawyers in the infancy of criminal procedure inherited from the schoolmen, to make the degree of guilt depend upon whether the criminal had thrust his weapon forward in the bosom of his victim, or had drawn its sharp edge across his throat.

In disposing of the present case it is not necessary to say whether the charge, as made in the indictment, is embraced within either of the words employed in Sec. 791 of the Revised Statutes. The offence, described and denounced in Sec. 794—whoever shall with a dangerous weapon, or with intent to kill, inflict a wound less than mayhem—is the crime of which the defendant was convicted, as is manifest from the terms of the verdict. It is an offence of less magnitude than that for which he was indicted, and of the same class, and under the salutary reform in criminal practice, already noted, the jury was authorized to convict of a less offence under the indictment for a greater.

Judgment affirmed.

---

### DISSENTING OPINION.

Poché, J. I cannot assent to that part of the opinion which justifies the conduct of the District Judge in directing the jury to retire for the purpose of correcting the first verdict which they had found and returned in this case.

In my opinion the question, "Gentlemen of the Jury, did you find that the accused had inflicted no wound on the woman alleged to have been cut?" was suggestive of the opinion of the Judge that the jury had made an error on the facts of the case, and was manifestly calculated to influence them in receding from their finding. It was evidently an expression of surprise at the verdict, which was predicated on the belief that no

wounds had been inflicted, and it had the unavoidable effect of drawing from the foreman of the jury the declaration that they intended to find the accused guilty of the next highest grade of offense after that charged in the indictment.

Under our law, the trial Judge is expressly forbidden from using any expression tending to influence the decision of the jury on the facts. R. S., Section 1963.

The second verdict returned by the jury was the direct result of the Judge's question and actions in this connection. The first verdict of the jury was responsive to the charge, was not informal and presented none of the features which could justify the interference of the Judge with a view to its correction.

The bill of exceptions taken to the proceedings at this stage of the trial, shows that after the above recited declaration of the foreman of the jury, the Judge directed the clerk to poll the jury for the purpose of ascertaining their intention, and the jurors in open court were required to answer by stating when called whether this was their intention, as declared by their foreman.

Such a proceeding was grossly irregular and presents the novel spectacle of a petit jury deliberating in the jury box, in open court, with the assistance of the Judge and of his clerk. I venture the assertion that no authority can be found in support of such a proceeding.

For those reasons I dissent from the decree rendered in this case and I think that the accused was entitled to a new trial.

Justice Todd concurs in this opinion.