Statement of the Case.
NICHOLLS, J.
Appellant, R. T. Rogers, was indicted jointly with William Womack, Ryan Henderson, Rube Nichols, and George Sullivan for the murder of Jesse Brown.
*96 A severance having been granted at the request of the state, Rogers was tried separately, found “guilty as charged,” and sentenced to death. He has appealed.
He relies for reversal upon complaints set out in a large number of bills of exception. Of these the first to which we direct our attention is bill of exception No. 28, which is as follows:
“State of Louisiana v. R. T. Rogers et al.
No. 2162.
“Seventh District Court, Parish of Richland, State of Louisiana:
“Be it remembered that on the trial of this case as to the defendant Robt. T. Rogers, who was indicted jointly with the other defendants herein, William Womack, Ryan Henderson, Rube Nichols, and George Sullivan, a severance having been granted on the motion of the district attorney, the two colored defendants, Rube Nichols and George Sullivan, indicted jointly with the other defendants, as above set forth, were both sworn as witnesses for the state against the defendant R. T. Rogers, then being tried separately as above stated. And the said defendants Rube Nichols and George Sullivan, being the only witnesses sworn who claimed to have been actually eyewitnesses to the homicide, and the said Rube Nichols and George Sullivan testified as to the connection of defendant William Womack with the crime, as is shown by their testimony in chief, which is attached hereto, with the leave of the court first had and obtained, and made a part of this bill of exceptions.
“Thereupon, when the state had concluded its case, and the case was with the defendant R. T. Rogers, his counsel had sworn in his behalf the following named witnesses for the purpose of proving an absolute alibi on or for the night the crime was committed on the part of the defendant, Wm. Womack, and for the purpose of rebutting thereby the testimony of said defendants Sullivan and Nichols, sworn as witnesses for the state as aforesaid, to wit: E, A. Landernau, Leopold Brandin, Luther Howard, Sam Hebert, Walter Hebert, Wayne Womack, Galvin Hebert, Albert Culpepper, Edwin Roberts, H. A. Hebert, and Riley Pittman — all of whom were produced and sworn in open court in the presence of the jury, and counsel for the defendants proceeded to interrogate each of them for the purpose of proving said alibi, and for the purpose of rebutting the testimony of defendants'Sullivan and Nichols, sworn as witnesses by the state as aforesaid.
“Thereupon the counsel for the state objected to the questions propounded to each of said witnesses, upon the ground that the testimony sought to be elicited was irrelevant, incompetent, and immaterial; and upon said objections so made the court ruled as follows:
“ ‘Why, I think the objection is good. The sole purpose of introducing the testimony is to contradict or impeach the testimony of the two witnesses placed on the stand for the state— that is, George Sullivan and Rube Nichols— if I understand counsel’s position; and, as that can only be done as to material issues, I shall sustain the objection. The testimony will be rejected.’
“A like objection and a like ruling being made and had as to the testimony of each of said witnesses.
“To each and every one of which rulings of the court, at the time they were made, counsel for the defense then and there reserved a bill of exceptions, with the leave of the court to attach the- testimony in chief of said witnesses Nichols and Sullivan thereto; and accordingly present this their bill of exceptions, with said testimony attached, and which is accordingly signed in open court on this, the 12th day of April 1905.”
Opinion.
The contention on behalf of the state, in support of the court’s ruling, is that:
“The subject-matter of the testimony to be contradicted must also be material and relevant to the issue, and the contradiction must not be merely for the purpose of discrediting the witness’ testimony generally by showing that in immaterial matters his statements are untrue.” State v. Clark & Boyd, 38 La. Ann. 105; Wharton, Crim. Ev. § 482 et seq.; 1 Green-leaf, Ev. §§ 449-462.
“It is a well-known rule that a witness cannot be cross-examined as to any fact which is collateral or irrelevant to the issue, merely for the purpose of contradicting him by other evidence, if he should deny it, thereby to discredit his testimony; and, if a question is put to a witness which is collateral or irrelevant to the issue, his answer cannot be contradicted by the party who asks the question, but is conclusive against him.” Greenleaf on Evidence (15th Ed.) § 449; 1 Roscoe, Crim. Ev. p. 100; Starkie on Ev. (9th Ed.) p. 210; Best’s Prin. of Ev. § 644.
“When a witness is cross-examined on matters collateral to the issues, his answer cannot be subsequently contradicted by the party putting the question. The test whether the fact inquired of in cross-examination is collateral is this: Would the cross-examining party be entitled to prove it as a part of his case, tending to establish his plea?” Id.; State v. Clark, 38 La. Ann. 105: State v. Donelon, 45 La. Ann. 745, 12 South. 922.
Defendant’s counsel on the other hand maintain that:
“The defense was not attempting to contradict the answers of a state witness, made on *97 cross-examination in matters collateral to the issue, but to impeach by independent evidence answers to an examination in chief by the state.
“It is well settled that, when a witness is cross-examined on matters collateral to the issue, his answerp cannot be subsequently contradicted by the party putting the question. This limitation, however, only applies to answers on cross-examination. It does not affect answers to an examination-in chief.” Am. & Eng. Ency. of Law, vol. 10, p. 1103 (2), “Direct Examination”; State v. Donelon et al., 45 La. Ann. 757, 12 South. 922; Wharton, Criminal Evidence, § 484.
“The credibility of a witness is always in issue, and evidence of any fact which tends to impeach it, or to demonstrate the improbability of the truth of his assertions, is relevant to the issue and admissible. As has been well said, if a witness fabricates a story with circumstances, the disproval of the circumstances is generally the only possible way of disproving the material facts.” Am. & Eng. Ency. of Law, Vol. 30, pp. 1103, 1104.
The testimony which the defendant was seeking to contradict, rehut, or disprove by other witnesses was not testimony brought out by questions asked of the state witnesses on. cross-examination on the part of the defendant, hut by questions asked them by the prosecuting attorney. The parts of the testimony sought to he contradicted were statements made by the witnesses as links in the evidence adduced against the accused as part of the state’s case. The witnesses who gave the testimony were on their own testimony implicated in the crime charged against the defendant. Everything which they narrated as part of the res gestas was of the utmost importance to the accused, and it was not a matter immaterial, collateral, or irrelevant to the issue that it should he rebutted or disproved. It was. not sought to be disproved for tbe purpose of assisting Womack, who was not on trial, in his defense, hut to protect Rogers from fabricated or erroneous testimony. We think that defendant was entitled to have placed before the jury for their proper consideration and enlightenment everything going to break down the testimony of the witnesses who had been placed on the stand against him in relation to the res gestee of the crime charged. The court erred prejudicially to the accused in excluding the testimony offered by him. As said by Elliott, O. J., in Sellers v. Jenkins (1884) 97 Ind. 436:
“A witness who tells a falsehood concerning a matter incidentally connected with tbe subject of tbe action is as likely to testify untruly as if the falsehood had directly affected the issue.”
The conclusion reached by us as to the matter covered by this hill carries with it the reversal of the judgment appealed from. As several matters covered by other hills may arise on a second trial of tbe ease, we think it right to pass upon them. Tbe first is as to tbe refusal of tbe district judge to allow testimony to be taken as to the general reputation of the witness Hawkins for truth and veracity in tbe town of Ruston, just before be was placed on the stand. It is true that Ruston was not the domicile or X>ermanent place of residence of ' the witness, but he may have been in that place a sufficient length of time to have established there a general reputation as to truth and veracity. If such was the fact, and that fact was known to the witnesses offered to show what it was, they should have been heard.
Defendant complains: That at the close of the examination of Singletary, a witness for the defense, the district attorney, over objection made by the defendant, was permitted to ask him the general question: “Have you told all you know about the case?” That the district attorney should not then have been permitted immediately to-hand to witness (over the objection of defendant’s counsel, who claimed the right to see the same) a certain letter, accompanied by the statement and question: “I wish you to please examine this letter which I now hand you. State whether you wrote this letter to Lewis.” To which the witness answered that “he had.” The state’s cross-examination of the witness then closed, and thereafter, after the state and the defend *98 ant had. both closed their case, the district attorney offered in evidence the letter itself, and over the objection of the defendant it was received and read to the jury. The bill of exception taken, touching the matter complained of, recites that the offering of the letter was objected to as irrelevant and immaterial, and for the further reason that it was not in rebuttal of any fact known by the defense, and for the further reason that it was hearsay as to the defendant Rogers; that if the purpose of the letter was to contradict the witness Singletary, by whom the letter was written, the witness had not denied that he had written the letter. On the contrary, he admitted he had written it, and therefore it was not in rebuttal of anything he had said as a witness in the ease. In allowing the letter to be read, the court said:
“The witness Singletary testified that he had stated all that he knew about the case, and the letter was offered and admitted for the purpose of contradicting the statement.”
In defendant’s brief it is claimed that the court permitted the letter to be read to the jury, without at the time giving any caution to the jury against the consideration of the same by it as substantive or “criminative evidence”; and it gave no caution on that subject to the jury in its charge. State v. Reed, 49 La. Ann. 708-709, 21 South. 732.
The letter referred to was as follows:
“Office of Mrs. A. M. Rogers, Dealer in General Merchandise.
“Girard, La. 2/25/1904.
“Dear Old Friend: I was very much sur-
prised when I received your most highly appreciated letter last night.
“Yes indeed we have had a very exciting piece of bus. down here not long since. It was one of the most horrible deeds that man could do. They went in at his window, or he turned them in-on him. No one can tell. Early in the morning I heard Joe Terrel yell out for help and when I got to his store there was no one there but Ryan and Joe. We began throwing water and never once dreamed that Brown was in the burning bed. We soon had the fire under control and went in to drag out the bed and found him in there with four bullet- holes through his chest near his heart. He had his wright hand up like he had been fighting some one. All his pistols, if he had any, were gone,
I mean the ones kept in his room with him, His toes were burned off and he was blistered in several places by the fire. They did not take any of his money nor open his safe. They also went in Rich’s ofiice and got one of his quilts, and after they killed Brown they went back to R-Office got his bowl and washed their hands and wiped them on his bed sheets. You see thay did that to throw suspicion on Dick. They did all they could with blood hounds but thet did no good. They tracked them to the river but could do nothing after crossing. They found blood in that boat at the crossing.
“The Dogs ran all around behind our store but didnt come near.
“You bet I don’t sleep here any more by myself and I- don’t rest any too well at the house.
“Now Billie, they arrested Bob R. Monday about 12 M and placed him in jail. They also have Dave Scott. They arrested those Thomas boys at the Jones place but turned them loose. They caught them because they thought that they killed him because Brown killed their father.
“I hated to see them take Bob like they did without some evidence. The only thing they arrested him for is because he and Brown were at ‘outs.’ The statement about cap and tie found in his bed, I mean Brown’s bed, it has not been identified by no one. No one knows whose it is. Mr. Rogers is just as innocent of it as we are.
“I went up to see him Tuesday morning and he was crying like a little baby. Mrs. Rogers worries me' almost to death, I am so tired of her foolishness, she has to cry at night instead of sleeping. I hope and think’ they will have the right man in less than two weeks.
“I could tell you a whole lot more, but I am afraid they might get hold of it.
“I will see you some time soon I hope.
“Uncle Dempse has been up at the house ever since they caught Bob. He said tell you that he had received your letter and was getting along O. K.
“He said that he-thought June had come very early.
“Well Billy I have told you all I know and hope you can read it.
“They promised to withdraw the charge put in against Mr. Rogers. We are looking for him home at any old time.
“Write soon and all the news.
“C. R. S. — ”,
The basis on which the letter was offered and received was that the writer had testified on the trial, in answer to the question propounded, that he had stated all he knew in the case, while in the letter he admitted . that he knew “a lot more” than he had testi *99 fled to; that Is, on the ground that the witness had made contradictory statements.
In defendant’s brief, counsel say.
“The court clearly erred in permitting the witness Singletary to be asked, on cross-examination by the state, the question: ‘Have you told all you know about the case, in reply to questions of counsel for defendant?’ the object of this question being to lay a foundation for impeachment through a certain letter written by the witness to one Lewis. If Singletary had simply made verbal statements such as are contained in the letter, it is clear that the proper foundation for impeachment was not laid by asking him the question, ‘Have you told all you know about the case, in reply to question of counsel for the defendant?’ as the witness was not interrogated by the state as to any particular statement made by him to any person at any particular time and place, and the state would have been precluded under the circumstances from impeaching the testimony of Singletary by placing witnesses upon the stand for that purpose.” Greenleaf (16th Ed.) Yol. 1, §§ 461, 462.
“The rule that the witness’ attention must be first called prevails in cross-examining a witness as to the contents of a letter or other papers written by him, but it is here applied in a particular and stringent form. The counsel will not be permitted to represent in the statement of a question the contents of a letter, and to ask the witness whether he wrote a letter to any person with such contents, without having first shown to the witness the letter, and having asked whether he wrote that letter, and his admitting that he wrote it.” Vol. 1, Green-leaf (16th Ed.) § 463.
“By improperly propounding, on cross-examination, to the witness Singletary a general question: ‘Have you told all you know about this case, in reply to the questions of counsel for defendant?’ and without first presenting the letter to the witness for examination, and asking him if he wrote it, the counsel for the state succeeded in making the witness answer in the affirmative the question: ‘Have you told all you know about this case, in reply to the questions of the counsel for the defendant?’
“It is not enough to ask the witness the general question whether he has ever said so, nor-whether he has always told the same thing, because it may frequently happen that upon the general question he may not remember whether he has so said, whereas, when his attention is challenged to particular circumstances and occasions, he may recollect and explain what he has formerly said.”
“This course of proceeding is considered indispensable from a sense of justice to the witness ; for, as the direct tendency of the evidence is to impeach his veracity, common justice requires that, by first calling his attention to the subject, he should have an opportunity to recollect the facts, and, if necessary, to correct the statement already given.” Greenleaf (16th Ed.) Yol. 1, § 462.
“Immediately after the witness had answered the question ' in the affirmative : ‘Have you
told all you know about this case, in answer to the questions of counsel for defendant?’ the counsel for state then propounded the question: T wish you to please examine this letter which I now hand you, and state whether or not you wrote this letter to him [Lewis].’ The question was objected to by counsel for the defense, the objection overruled, and the witness answered ‘Yes,’ at the first fair opportunity given him to correct his testimony.
“The letter was not introduced in evidence by the state on its cross-examination of Singletary, as shown in the reasons given in bill of exceptions 29 by the judge to sustain his ruling in not requiring the state to show the letter to counsel for the defense, although the letter had been handed to Singletary on the witness stand by counsel for the state, and witness had admitted that he wrote it.
“The ruling of the court was clearly erroneous, as the opposite counsel are entitled to look at the letter, when witness admitted that he wrote it.” Greenleaf (16th Ed.) Vol. 1, § 463.
“The letter written by Singletary is not in rebuttal of any fact sworn to by Singletary on direct examination by counsel for defense.
“The letter is not in rebuttal of his answer that he had told all that he knew about the case in answer to questions of counsel for defense, for the very next question propounded to witness on cross-examination by the state was: T wish you to please examine this letter which I now hand you, and state whether or not you wrote this letter to him [Lewis],’ which question the witness then and there, on cross-examination by the state, answered in the affirmative, thereby correcting his testimony that he had just given in answer to the previous question.”
In the state’s brief it is said (page 23):
“The questions were asked and the letter was offered for the openly declared purpose of informing the jury of the bias and interests of this witness in the acquittal of the defendant, his relationship to defendant and his family, and possibly his guilty knowledge of the entire transactions immediately surrounding the awful tragedy, committed in the very shadow of the store where he worked prior and subsequent to this crime. The district judge had a reasonable discretion to permit the testimony as an original evidence, if he thought it material ; and, had all the evidence in the case been closed, it would not have been improper for him to have reopened it before the argument began, or the submission of the case to the jury, with the reservation of the right of defendant to reply to it by other evidence.”
The question asked the witness Singletary was for the purpose of laying a foundation for his impeachment on the basis of having made, contradictory statements; the contradictory statements consisting of his answer *100 to this question, a comparison therewith with the testimony which he gave on the trial, and the declaration made by him in the letter to Lewis that he knew a good deal more than he had told him in his letter, but that he was afraid that “they [not naming who] might get hold of it.”
The letter read to the jury contained no statement that we discover “contradictory” to those made by the witness on the trial. It discloses that the witness must have known something as to which he failed to testify, but this would place the impeachment on a different basis. The contradictory statements which the state placed before the jury were the contradiction between his answer that he knew nothing more than he had testified to and the statement contained in the letter that he knew something more than he had communicated to Lewis. We do not think the state had the right to change the basis upon which the impeacli-ment could be made through the question asked of the witness on the trial. The district attorney did not attempt on the cross-examination to prove what the facts were which he failed to disclose, nor who the parties were that he was afraid might get hold o.f the information which he said he would not disclose, but submitted the letter as substantive criminating evidence to the jury, leaving them to infer or presume that the information not disclosed was testimony damaging to the accused, which he was afraid the prosecution might utilize. We think the accused was prejudiced by this course, as it was calculated to impress the jury, not only with the belief that the witness was biased in favor of the accused, but that he had knowledge of matters not disclosed, which it was left free for them to infer might be very damaging to the accused.
We think defendant’s counsel was entitled to have been given the letter when he asked to see it, and before the witness answered. Wigmore’s Evidence, vol. 2, § 1861. Had the state intended to prove verbal contradictory statements, the defendant would have had an opportunity to object at once to the question and answer. As it was, the witness committed himself to the fact that the letter was his, and thereafter it was given in evidence as stated.
We are of the opinion that the verdict of the jury and the judgment appealed from are erroneous, and they are hereby annulled, avoided, and reversed, and this cause is remanded to the district court for further proceedings according to law.