ing of the paper," and that on December 13, 1900, the paper turned in "was called for on a settlement before and after the disputed settlements."

If plaintiff received credit for the paper, it matters not whether it was shifted from one settlement to another. It may be that, when several settlements were entered by the auditor at the same time, paper belonging to one settlement might be credited to another settlement. We do not see, however, how mistakes or errors of this kind can affect the result of settlements which are undisputed and judicially admitted to be correct. Plaintiff has claimed the benefit of these settlements by offering them in evidence as vouchers in his favor. The auditor's books were used by the plaintiff to prove that the items which he claimed entered into the two disputed settlements were valid obligations of the parish. When, however, the same books showed that the items which plaintiff claimed to identify with the disputed settlements were paid by the parish in other settlements, plaintiff undertook in rebuttal to prove that the books and the hitherto undisputed settlements were wholly unreliable. Had the evidence been admitted, and it had been shown that paper which belonged to one genuine settlement had been shifted to another genuine settlement, the result would not have been changed.

Such evidence would not aid plaintiff in proving the existence and validity of the disputed settlement, nor can we see how the impeachment of the correctness of the auditor's books on which plaintiff relied to establish the validity of his claims can aid him in this cause.

We see no merit in the exceptions reserved by plaintiff to the rejecting of the evidence offered by him in the court below.

The claim of the defendant for the forfeiture of commissions on settlement made and accepted by the police jury from time to time is the next question in the case. We see no reason why such a forfeiture may not be waived by the police jury, and concur in the opinion of the judge a quo that the conduct of the police jury in accepting belated monthly statements from year to year, without protest or objection, amounted to such waiver. Such settlements are equivalent to voluntary payment of commissions.

The interest at the rate of 5 per cent. per month allowed by the judgment in favor of the defendant is in strict accordance with the provisions of section 79, p. 380, of Act No. 170 of 1898. Such interest is a part and portion of the taxes unlawfully withheld by the tax collector, and commences to run from the time the taxes should have been paid.

Judgment affirmed.

(40 South. 771.)

No. 15,816.

STATE v. GOODSON et al.

(Feb. 12, 1906.)

1. CRIMINAL LAW—TRIAL—ENTRIES OF FACTS —VERIFICATION.

If the district judge, under Act No. 113, p. 162, of 1896, gave instructions to the clerk to take down the facts, counsel had the right and it was their duty to have supervised and verified at the time the entries made by the clerk. They had the right to have the entries made by the clerk read in open court as made, and to have the same enlarged and modified if deemed insufficient. It was no part of the judge's duty to do this for counsel. It was the duty of counsel to know at the time what was done by the clerk and they could not postpone finding, as late as they did, what the situation was. They had the power to have known, and should have done so.

2. SAME — BILL OF EXCEPTIONS — CORRECTION BELOW.

It has been the constant practice of the district judges to mention in the per curiam statement made in bills of exception any fact which, occurring after the ruling complained of, would go to show that the ruling, if erroneous, was harmless, or had been waived. As the Supreme Court, in criminal cases, deals only with questions of law, there should be some method by which the appellate court could come to a knowledge of the harmless character of the error or its waiver. Either the judge

should mention such fact, or the district attorney be afforded an opportunity to do so; otherwise, the greatest criminals might be released on totally unfounded grounds. If the judge in the per curiam statement should state any fact injurious to the defense or unwarranted, defendant is afforded an opportunity for correction by a motion for a new trial, and he should avail himself of that remedy.

### 3. SAME—APPEAL—REVIEW.

The mere fact that a judge has given no reasons for his rulings furnishes no ground for reversal of the judgment appealed from.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Criminal Law, § 2991.]

### 4. SAME—ARRAIGNMENT—JOINT INDICTMENT.

Two out of three ·parties jointly indicted for murder were arraigned and tried together. The third party was not simultaneously ·arraigned. Complaint on that score did the appellants no injury.

### 5. HOMICIDE—BILL OF PARTICULARS.

Appellants were not entitled to a bill of particulars as claimed by them. They were charged with the commission of murder; a ·specific crime of which time was not the essence. The indictment was sufficiently definite, and judgment thereon would support a plea of res judicata.

### 6. WITNESSES—RIGHTS OF ACCUSED—COMPULSORY PROCESS.

Appellants did not have the constitutional right to have their counsel granted a private interview with the third party who was charged jointly with them, who was then confined in jail, and whom they had subpoenaed as a witness. Under the circumstances of this case, appellants had no legal ground for complaint.

### 7. CRIMINAL LAW — SEVERANCE — HARMLESS ERROR.

The court's refusal to grant the two appellants a severance of trial under the circumstances shown was not ground for reversal. They were tried separately from the third party who was charged jointly with them. See State v. Gournet, 9 South. 436, 43 La. Ann. 197, and Act No. 41 of 1904.

### 8. SAME—TRIAL—EXCLUSION OF WITNESSES.

Complaint that a person was permitted to testify as a witness who had remained in the courtroom while other parties were giving testimony in violation of the court's orders, *held* harmless under the circumstances of the case.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 1559.]

### 9. HOMICIDE—EVIDENCE.

The admission of a certain appearance bond executed by the two appellants to appear for trial on a charge of having some time before the homicide attempted to kill the party, whom they stood charged with murdering, in order to prove motive, was not error under the circumstances that this was done.

### 10. WITNESSES—IMPEACHMENT.

A complaint that the court permitted two witnesses on behalf of the state to testify that to their knowledge a witness on behalf of the defendant could in point of fact speak English fluently and understand it, in contradiction of his declaration to the contrary, furnished no ground for reversal, under the circumstances that this was allowed.

### 11. CRIMINAL LAW — TRIAL — REMARKS TO JURY.

A remark made to one of the jurors by a bystander "that he looked warm" was properly deemed by the district judge as a matter of no moment. The jury had not been permitted to separate. They were being accompanied by two deputy sheriffs to the jury room as the necessity of the case required should be done.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 1460, 2053.]

### 12. SAME—VERDICT—CORRECTION.

The sending back by the judge of the jury to their rooms touching their verdict was perfectly harmless, under the circumstances this was done.

(Syllabus by the Court.)

Appeal from Judicial District Court, Parish of Natchitoches; Charles Vernon Porter, Judge.

Thomas Goodson and others were convicted of murder, and appeal. Affirmed.

Breazeale & Breazeale, for appellants. Walter Guion, Atty. Gen., and William Augustus Wilkinson, Dist. Atty. (Lewis Guion and Samuel Jamison Henry, of counsel), for the State.

### Statement of the Case.

NICHOLLS, J. The defendants Tom Goodson, Antoine Mahlfous, alias Mack Abraham, were indicted with Jules Silvie for the murder of one Ozeme Desidiere. The two former were arraigned and pleaded not guilty. They were tried and convicted and sentenced to the penitentiary for · life. Silvie was not arraigned, nor tried. The parties convicted appealed.

The first complaint made was when the accused were arraigned and the case fixed for trial. At that time counsel for Goodson and

Mahlfous objected to the nonarraignment of Silvie, and to the fixing of the case, on the ground that all the parties charged in the indictment were not arraigned, although they were in custody. The objection was overruled.

The second complaint made is that the court refused to require the district attorney to furnish the accused with a bill of particulars setting forth in detail the particulars as to the time, date, and crime alleged to have been committed by them. They averred that the language of the indictment charging them with the crime of murder on or about the 3d day of July, 1905, was general and indefinite, and as their defense would be specific in character they desired to be furnished with the specifications, and that without the bill of particulars they would suffer irreparable injury, as they would be forced to trial without having prepared the proper defense.

The third complaint is that the court refused the application made to it to be accorded access to Jules Silvie then incarcerated in jail. They averred that by special order of the court a subpœna had been issued to the witness, on which return had been made by the sheriff, and that personal service thereof had been made. They averred that they were legally entitled to consult and have interviews with said Silvie, summoned as a witness on their behalf.

The fourth complaint is that the case having been regularly fixed for trial, counsel for Goodson and Mahlfous made a motion for a severance, which was tried and overruled.

The fifth complaint is that, over their objection, the court permitted one Charles Turner to give testimony in the case, notwithstanding the fact that at the beginning of the trial, on motion of the district attorney, acquiesced in by defendants' counsel, all the witnesses for the state and the defense were ordered to be marshaled and excluded from the courtroom, and placed under the rule of absolute exclusion; the said Turner, had remained in the courtroom in violation of the order, and had heard five or six witnesses for the state testify.

The sixth complaint is that over defendants' objection, the court permitted to be introduced in evidence certain bonds which had been executed by Goodson and Mahlfous for appearance, to await action of the grand jury charged with the crime of lying in wait, and shooting at Ozeme Desidiere with intent to kill. The objection urged was because the bonds did not show motive or enmity and recited details of a difficulty or charge against the defendants, untrue in fact, and only the opinion of the magistrate writing the same, and was not proof of the fact, and was calculated to prejudice the minds of the jury, and was not the best evidence, and in fact, not evidence to show enmity and motive; that though positive, direct evidence as to a previous difficulty was admissible, an appearance bond was no evidence.

The seventh complaint is that the court improperly sustained a challenge of the juror Gerein by the district attorney.

The eighth complaint is that the court, over objection, allowed two witnesses to contradict the statement made to the court by one of the defendants' witnesses, that he did not understand the English language sufficiently to be able to testify and to show that the witness could speak the English language, and the court swore an interpreter to interpret his testimony. The objection urged was that the witness alone was the best judge as to his ability to understand the English language sufficiently well to comprehend the meaning of the questions propounded; that the matter was not impeachable, and formed no issue in the case.

The ninth complaint is that after the defendants closed their case, and after several witnesses had been sworn in rebuttal by the

state, counsel for the defense stated to the court that they had just discovered important testimony in behalf of their client and requested the court to reopen the case to allow such testimony to be taken; that, if allowed so to do, they would show by one Gourden that several days subsequent to the homicide, Jules Silvie (the chief prosecuting witness and the person indicted jointly with the two accused on trial) had stated to him that "he knew nothing whatever about the killing and that it was foolish for him [Gourden] to think that Tom Goodson, one of the accused, would take him [Silvie] along to kill a man."

That this request to reopen the case was improperly refused.

The tenth complaint states that after the jury had left the courtroom and were on their way to the jury room in the custody of the sheriff to make up their verdict in the case the court having been informed by counsel for the accused that one "Buck Cloutier" had addressed Lagent Lamore, one of the jurors in the case, caused the said Cloutier to be brought into court. Whereupon the following proceedings were had:

By the Court (addressing Cloutier): "I am informed that you made some remark or addressed one of the jurymen in this case. Is this correct?

"A. Yes, sir: did not think it was any harm. I just said: 'You look like you are warm.'

"Q. Is that all?

"A. Yes, sir."

By Counsel for the Prisoner: "It was 'Lagent'; the manner he said it has much to do with it. A. (by Cloutier) I said, 'Lagent, you look warm.'"

To this ruling of the court defendants objected.

The eleventh complaint is made by the accused that the jury having returned into court the following verdict, to wit:

"We, the jury, find the prisoners Tom Goodson and Kalil Mahlfous guilty of murder without capital punishment, as charged in the indictment."

The court charged the jury as follows:

"Gentlemen: One of the accused in this case, the indictment charges that his name is Kalil Mahlfous, alias Mack Abraham; now if you are satisfied from the evidence in the case that he is known by either of these names (alias meaning 'otherwise known as Mack Abraham'), I ask you to just retire to your room and interline after Kalil Mahlfous the words 'alias Mack Abraham.' That is within your discretion. I cannot refer to the evidence or decide what was proven, but if the evidence in this case satisfies you that he was known by either one of those names Kalil Mahlfous or Mack Abraham I will ask you to interline the words 'Mack Abraham' right after the name—you understand."

Whereupon counsel for the accused excepted to the instruction of the court, and reserved the point for bill of exception.

In the per curiam attached to the bill the judge states:

"The accused had been indicted under the name —— Mahlfous, alias Mack Abraham, and the district attorney had amended his name after the case was called for trial by substituting the name 'Kailil,' so as to make it read 'Kalil Mahlfous, alias Mack Abraham.' When the jury returned into court with the verdict, I was not sure whether or not defendant's counsel had reserved a bill to said indictment, and, as the proof had shown that the said Mahlfous was almost entirely known as Mack Abraham, out of abundance of caution, and in order to identify him with the party charged in the indictment, beyond any doubt, I thought it best for the jury to use the word 'alias' in connection with him. The statement in the bill that the verdict had been 'returned' when the instructions therein mentioned were given is erroneous. The verdict had simply been handed to the judge by the foreman and before it was announced. I requested the jury to return to their room, and, in the event they were satisfied from the evidence that Mahlfous was generally known as Mack Abraham, to include that alias in designating him. Before the jury retired, I permitted counsel for defendant to make a literal copy of the verdict so as to avoid any suspicion on their part of any substantial change therein by the jury. The jury having retired and having made the suggested change returned into court and the verdict was regularly rendered and recorded."

Appellants presented in the Supreme Court, over the objection that it was made too late, an assignment of error, which the court allowed to be filed without prejudice.

They assigned as error that they did not have a fair and impartial trial, and their rights guaranteed by the laws of the state were not protected and preserved in said trial in the particular that Act No. 113, p.

162, of the General Assembly of 1896 was not observed by the honorable the eleventh judicial district court in the conduct of their trial, and the rights guarantied to them by the act aforesaid were ignored and denied. They averred that the facts upon which the several bills of exception taken on their behalf by their counsel during their trial to the rulings of the district court were not reduced to writing by the clerk or other person as required by Act No. 113, p. 162, of 1896; that only vague, indefinite and incomplete memoranda were ordered by the court and made by the deputy clerk as instructed by the court were taken and kept of the several important objections and bills of exception taken by their counsel as would be seen by the annexed memorandum book filed and marked "Exhibit A" accompanied by the certificate of the deputy clerk. They assigned as error on the part of the judge of that court the failure to comply with Act No. 113, p. 162, of 1896. They averred that they could not present their grievance to the judge of the district court, for the reason that they did not discover it until after the sentence and judgment of the district court was passed, and that court had ceased to have jurisdiction; that their attorney did not discover, until after the sentence was imposed, the violation of their rights, and were compelled to depend upon the memory of the deputy clerk and other persons in preparing the several bills of exception, and there was no certainty of their being correct, and as fully and truly showing what really occurred during the trial. That the method which they had adopted was the only way they had to call the attention of the Supreme Court to the injury complained of as having occurred in the district court. They prayed that their assignment be considered and relief granted by a new trial.

We find in the transcript headed as "Addenda to Rulings on Bills of Exceptions" the following:

"In addition to the foregoing formal bills of exception, which were submitted to me, I notice in the record three bills, which were reserved as to matters occurring in the preliminary stages of the trial.

"A. To the refusal of the court to compel the district attorney to comply with a motion for a bill of particulars, I thought that the indictment set forth the offense charged with sufficient particularity to enable the accused to make their defense. I do not think I would be justified in compelling the district attorney to lay bare his case by stating the exact hour when the murder occurred together with the other facts in detail connected with it. As a matter of fact the defense showed by a large number of witnesses that both of the defendants were five or six miles distant from the place where the crime was committed at the time it was committed. The jury did not believe these witnesses, and I concur in their view of the matter.

"B. A motion for severance in the case.

"This motion was made after the district attorney had announced ready for trial, and there is nothing in the motion and nothing subsequently developed in the case, which in my opinion justified the severance.

"C. Motion to be allowed to interview Jules Silvie.

"As stated before, Jules Silvie, the witness referred to in the motion, was jointly charged and indicted with the other two accused. And I was informed by the district attorney that he wished to use Silvie as a witness for the state. Moreover, when the motion was filed, Mr. W. T. Cunningham, an attorney at the bar, notified the court that he represented Silvie, and would not consent for the counsel of the other two accused to interview him. The present counsel for the defendants and I differ as to the proper mode of presenting the last three matters A, B, and C. My opinion is that they should be presented by formal bills of exception just as other matters are. While he is of the opinion that they are unnecessary. Hence I deem it necessary to give the court a knowledge of the reasons which prompted me to refuse said motions."

### Opinion.

There was no bill of exceptions taken to the action of the court in declining to accede to the right asserted by Goodson and Mahlfous that they could not be compelled to be arraigned unless Jules Silvie charged with themselves in the indictment with having murdered Ozeme Desidiere should be simultaneously arraigned, and to the action of the

court permitting the case to be fixed for trial prior to the arraignment of all three of the parties charged. We come to the knowledge of what occurred at the time of the arraignment only through the minute entry made at that time to the effect that such objection was made and overruled. Neither the grounds of objection nor the reasons of the court are given. Whether, as a fact, the defendants assigned their grounds of objection at that time, we do not know. We have no reason to suppose that the defendants asked or were refused to be allowed to place their grounds of objection on the record. We know of no rule of practice requiring the judge to assign reasons for his rulings in the absence of a request that he do so, and which would authorize his mere failure so to do being assigned as reversible error.

Counsel say:

"We do not think it just or fair to supply reasons for the judge's decisions. If we go into the domain of conjecture it would be easy to think of a valid, sound and legal reason for his decision. We can with equal ease suggest a dozen reasons why his decision was erroneous."

The rulings of the trial court are presumed to be well grounded. It is for those who contest their correctness to show error affirmatively. Counsel say:

"There appears no good and substantial reason for nor compliance with the demand to so arraign and try all parties denounced in the indictment, especially as in this case a conspiracy between the three defendants was relied on to convict. * * * We would not be understood as challenging the right of the state to place upon trial any one of the accused separately from the others, but we do complain of the action of the trial judge in refusing to arraign all the conspirators arbitrarily and without assigning reason for his action."

We fail to see wherein the two complaining defendants were injured by the failure to arraign all the parties simultaneously. They insist that they were entitled to have the three arraigned and tried together, and yet concede the right of the state to have them tried separately, and later on they insisted upon their right to a severance, making

the court's failure to order a severance a ground for serious complaint. The two defendants (appellants) went to trial later without objection.

The defendants were not charged with conspiracy, if that fact was a factor to be considered in the case. See Clark, Criminal Proceedings, § 154, "Separate Trial of Joint Defendants."

The second complaint that "the court refused to force the district attorney to furnish them a bill of particulars giving them specific details as to the time, date, and place of the crime, which they are alleged to have committed" is based, we think, upon a claim that a bill of particulars can be asked as a matter of right. If so, counsel is mistaken. It is a matter resting greatly in the discretion of the trial judge. 1 Bishop, Crim. Procedure, § 643, 2 Bish. Cr. Proc. §§ 100, 201.

When the charge is general the court may require the prosecuting officer to furnish the defendant with a bill of particulars. Generally an indictment must be sufficiently certain to give the defendant notice of the particular charge against him, so that ordinarily a bill of particulars is not necessary. There are cases in which from the nature of the crime the charge may be so general as to make it right and proper for the accused to ask and the court to require the prosecuting officers to furnish a bill of particulars showing the particular kind or character of act on which and with which he stands charged. Clark's Criminal Procedure, § 151.

The case of State v. Maloney (recently decided by this court) 39 South. 539,[1] furnishes an instance where such a bill could be properly asked. The charge made in this case was of the murder of a particular person. Defendants are charged with the commission of a single specific act as to which there could be no possible mistake, and in regard to the perpetration of which time is not

---

[1] 115 La. 498.

of the essence. There can be no pretense that the verdict and the judgment rendered in this case would fail to support a plea of res judicata. The state cannot be tied down and committed to unnecessary and dangerous averments as to the details of the crime charged. We find the ground of complaint now discussed not well grounded.

No bill of exception seems to have been taken in respect to the third complaint which is to "the refusal of the court to allow counsel of Goodson and Mahlfous to communicate with Jules Silvie, one of the three parties indicted for murder who had been subpœnaed as a witness for the defense." The minute entry touching the same recites simply the fact of the motion having been made to allow an interview with Silvie, and that same had been overruled. The motion itself is in the record. In that motion the two complaining defendants recite that they had made application to the sheriff to be allowed the privilege of interviewing and consulting with Jules Silvie (then in the parish jail), said interview being for the sole purpose of getting information in behalf of their defense, and said application having been refused they made application to the court to grant said application; they averred that they knew that Silvie was in possession of important, necessary, and material evidence which was essential in their defense, and if deprived of the opportunity of consulting with him, they would suffer irreparable injury. That they were charged with murder; that their case was fixed for trial four days off, and they should be accorded every right guarantied by the Constitution in making a proper and legal defense of their lives. The prayer of the motion was that the sheriff be ordered to give the counsel of defendant access to the said Silvie at such legal hours as would cause no inconvenience to said officer and from time to time as he might request.

In the statement made by the judge regarding this matter, he states that he was informed by the district attorney that he wished to use Silvie as a witness for the state, and moreover, when the motion was filed, W. T. Cunningham, an attorney at the bar, notified the court that he represented Silvie, and would not consent for the counsel of the other two accused to interview him.

Counsel of appellants state their position on this subject as follows:

"It might be within the discretion of the trial judge to refuse counsel permission to see and talk with Silvie in face of objection by Silvie's counsel when a mere request is made by counsel to be so permitted. But if duly and legally summoned by defendants as a witness, to deny counsel to see and talk with his witness simply because a member of the bar says he represents their witness and objects to counsel seeing him is violative of a legal right, is arbitrary and tyrannical, and deprives accused of a constitutional guaranty. Const. Bill of Rights, arts. 2, 9.

"The Constitution guaranties that no person shall be deprived of life, liberty, or property except by due process of law.

"That in all criminal prosecutions the accused shall have the right to compulsory process for obtaining witnesses in his favor.

"These guaranties mean, if they mean anything, that accused shall have the right to summon and to examine and consult his witness.

"To say that you can summon a witness, but you shall not see him or talk to him to see what he knows, whether or not his testimony is desirable is not due process of law.

"To give with one hand and to take back with the other is not the function of the law.

"It is a vain ceremony to summon a witness and then to be refused permission to talk with him, to find out what he knows to consult with him before placing him on the stand.

"What lawyer would place a witness on the stand before consulting him?

"Where is the law vesting the district judge with authority to prevent and prohibit access to a witness duly subpœnaed?

"We know of no such law. There is no suggestion in the record that the district attorney had summoned Silvie as a witness. As a matter of fact he was not summoned as a witness for the state, but was used and sworn as such, the sheriff bringing him into court when he was needed.

"Further, if the court please, the defendants did not use him as a witness. The court having denied them the right to consult him, their attorney, of course, would not take the responsibility of swearing him without first knowing the scope and materiality of his testimony in advance.

"The constitutional guaranty to an accused of the right to compulsory process for the at-

tendance of his witnesses is not to be trifled with. It is not a dead letter, and must be enforced. State v. Adams, 40 La. Ann. 745, 5 South. 30.

"The principle announced here necessarily includes the right to consult their witnesses."

We do not think that the provision of the Constitution, to the effect that in all criminal proceedings the accused shall have the right to compulsory process for obtaining witnesses, was intended to carry with it, as a constitutional right conferred upon accused parties to examine and consult privately and out of court with the witnesses summoned. The accused was accorded the right to compulsory process upon Silvie. He was summoned, but the defendants did not think proper to call him as their witness. Appellants had full opportunity to cross-examine him as the state's witness.

A question somewhat similar to that just mentioned was submitted to this court in State v. Gosey, 111 La. 632, 35 South. 786, and decided adversely to the broadly stated right advanced by the appellants. We adhere to that ruling under the circumstances of this case.

The fourth complaint is that a severance was not granted the two appellants. They were in point of fact not tried with Silvie. In their motion to sever, they declared that they had reliable information that one Jules Silvie, jointly charged with them in the commission of the alleged crime, would, on trial, attempt to incriminate them, and that it was to their individual interest in the premises to secure separate trials.

They averred that they were material witnesses in each other's behalf and as codefendants on trial they would not be allowed to testify in favor of each other, and would thereby be deprived of material, important and necessary evidence in making their defense; that they were on trial for murder, and should be accorded every available opportunity in defense of their lives; that their respective interests would be greatly jeopardized by being tried together; that their means for making a consistent and lawful defense would be prejudiced, and they would suffer irreparable injury thereby.

No bill of exception was taken to the ruling of the court. The judge's statement in respect to the same is that the motion was made after the district attorney had announced ready for trial; that there was nothing in the motion and nothing subsequently developed in the case which, in his opinion, justified the severance.

We find nothing in the record to sustain the allegations of this motion. We do not find any attempt made on the part of either Goodson or Mahlfous to testify one for the other and, of course, no refusal by the court to allow them to testify. See, on this subject, State v. Gournet, 43 La. Ann. 197, 9 South. 436; also, Act No. 41 of 1904.

In respect to the fifth complaint that Turner was allowed to testify, notwithstanding he had remained in the court in alleged violation of the order of court ordering the witnesses to leave the courtroom, the judge states:

"The witness was not originally summoned by the state and was not put under the rule. He was called by the state to prove an isolated fact, viz., that the two defendants were under bond to answer before the grand jury for shooting at the deceased with intent to murder. The proof was offered by the state for the sole purpose of showing motive on the part of the defendant, and he was the only witness who testified as to that fact."

The reasons assigned by the judge deprive the complaint of all force.

In respect to the sixth complaint (that the court permitted certain appearance bonds executed by Goodson and Mahlfous to be introduced in evidence) the court states that the state having offered to prove by the witness Turner that the two accused were under bond to answer to the charge of lying in wait and shooting at the deceased (Desidiere) with intent to kill, and the defense having objected that the bonds themselves were the

best evidence, and said objection having been sustained by the court, he permitted the district attorney to introduce the bonds themselves, after having proved the signatures of the principals, and after having carefully instructed the jury that the sole purpose of the evidence was to show motive on the part of the accused, and not to show that they were guilty of any other offense.

We do not find any force in the complaint. The theory of the prosecution was, we presume, that the accused parties had an interest in preventing the deceased from testifying on the charge which had been preferred against them. Whether the pendency of the charge against them furnished a possible or probable motive for killing Desidiere was a matter which was left to the judgment of the jury.

The seventh complaint relating to the sustaining by the court of the challenge by the state of one of the jurors is not discussed, and is presumably abandoned. The defendants do not appear to have exhausted their peremptory challenges.

In respect to the eighth ground of complaint which was the action of the court in allowing two witnesses to swear that one of the witnesses for the defense understood and spoke the English language in contradiction of the declaration of that witness that he could not do so, the judge makes the following statement:

"One of the accused in this case is an Assyrian, and the only available interpreter was a fellow countryman from an adjoining parish whom the district attorney stated in open court [which statement was not denied and which I have every reason to believe was true] was actively assisting in the defense. A large number of the witnesses who were Assyrians attempted to prove an alibi for the accused Mahlfous, and all of them insisted upon giving their testimony in their native tongue, notwithstanding they could all speak the English language with more or less facility. When the witness Tessum was called, he refused to answer any questions addressed to him in English, and indicated by shaking his head that he could not speak the English language, and declared then to the interpreter under oath his inability to do so.

The state, in its rebuttal testimony, offered and was permitted to prove by Dr. Hendricks and his father that the witness had been peddling at their house; that they had often talked to him on the variety of subjects; that he spoke the English language fairly well, and could easily understand the same. Upon the introduction of this evidence, I instructed the jury that it could have no effect save to impeach the credibility of the witness and that the effect to be given to it was a matter entirely with the jury. I believed at the time, and believe now, that the witness was practicing a fraud upon the court in order to avoid cross-examination, except through the medium of an interpreter, who was a friend and countryman, and whose language was not understood by any one in the court except the adherents of the accused, who was a son-in-law of the other."

Appellants urge that:

"The state could not contradict the witness' testimony and let the jury determine the scope and effect of that contradiction; besides, there was no basis laid by the state putting the witness on guard by asking him whether he had not often conversed with the witness Hendricks in English."

The witness having then and there, in open court, made the specific announcement of his inability to speak or understand English, there was no necessity for questioning him on the subject. The witness was not entitled to be informed as to the particular instrumentality through which his declaration would be contradicted.

To question the veracity of the witness counsel for the state refers the court on this subject to 2 Am. & Eng. Ency. of Law (2d Ed.) p. 504; 1 Greenleaf on Evidence, p. 618, and notes; State v. Dalcourt, 112 La. 422, 36 South. 479; and State v. Rogers, 115 La. 164, 38 South. 952.

We do not think appellants had any ground of complaint.

In respect to the ninth complaint relating to the refusal of the court to reopen the case so as to allow the witness Gourden to give testimony discrediting that of Silvie, the court says that:

"After the defense had closed its testimony, and after the state had begun in rebuttal, counsel for the defense requested permission to offer additional testimony. Upon inquiry they stated that one Gourden, who was regularly sum-

moned as a defense witness and who had testified in chief for the defense, would, if permitted, swear that Jules Silvie, the principal state witness, and who had turned state's evidence, had a short time before his arrest told him [Gourden] that he [Silvie] knew nothing about the facts and had talked to no one about it.

"In view of the fact that the witness Silvie had, on cross-examination, when testifying in chief for the state admitted he had refused to talk about the case, except to the district attorney, the foreman of the grand jury, and the sheriff, and had stated to several people that he knew nothing about the facts, I did not regard the testimony as material, and, in the exercise of the discretion vested in me by law, declined to permit a reopening of the case. Moreover, the defendant had not laid the foundation for the impeachment of Silvie's testimony in this respect and the evidence was only admissible for that purpose."

We do not think the judge abused the discretion vested in him.

In respect to the tenth complaint relative to the remark of a bystander to one of the jurors, the judge states that:

"The moment after the jury left the courtroom in the custody of two deputy sheriffs, counsel for the accused notified me of the occurrence stated in the bill. The offender was brought before the bar of the court, and I discovered from investigation the following facts: As the jury passed from the courtroom through the corridor into their own room, Mr. Cloutier, addressing Mr. Lagent Lamore, one of the jurors and a kinsman of his, said in the hearing of the officers in charge of the jury: 'Lagent, you look warm.' Mr. Cloutier's statement of the affair was confirmed by the officers, and was not contradicted by the counsel for the accused. I dismissed the matter as entirely trivial."

We find no good ground for complaint in the matter referred to. It is not pretended that the jury were allowed to separate or permitted at any time to go about unattended by proper officers, or to pass where they were not called upon to pass. The officers were powerless to prevent parties who might be standing in the corridor as the jury passed, from making some remark to the jury. If a remark so made (no matter what it was) would be ground for reversible error, a very easy method of setting aside verdicts would have been found. The remark made in this instance was perfectly harmless as the judge

stated it was. See, on this subject, Underhill, Cr. Ev. p. 280, § 228.

The eleventh ground of complaint was (as stated) in relation to the sending back of the jury to their room for the purpose of altering the form of their verdict.

We find no good ground of complaint in the matter covered by this bill. No objection seems to have been taken to the amendment of the indictment by the district attorney. The verdict as originally written was sufficiently certain to fix the identity of the party convicted. The fear of the judge that it was not so and the sending back of the jury to make it more definite, in no manner prejudiced appellants. See State v. Faulk, 30 La. Ann. 831; State v. Jessie, 30 La. Ann. 1170; State v. Gilkie, 35 La. Ann. 53; State v. Wiggins, 45 La. Ann. 416, 12 South. 630; State v. Howard, 34 La. Ann. 370.

In addition to the objections already referred to in this opinion appellants complain of the action refusing a new trial. The only grounds set up in the motion were the general objection that the verdict was contrary to the law and the evidence and the specific objection that the district attorney had made improper remarks in his argument to the jury. We do not find that any bill of exception was taken to the court's ruling, and none could be expected, as by counsel's own statement in his brief the matter covered by the specific objection was cured by consent, if error there was originally.

To the "Assignment of Errors" filed by appellant he annexes what he styles a memorandum book marked "Exhibit A," accompanied by the certificate of the deputy clerk.

We are not authorized to consider those instruments being confined in our examination of the merits of the assignment to matters appearing in the record. The error assigned is "that it appears by the record that the district judge failed to comply with the provisions of Act No. 113, p. 162, of 1896. Referring to the facts upon which their bills of

exceptions rested, counsel say they were not taken down by the clerk as required by that act; that only vague and indefinite and incomplete memoranda were ordered by the court and made by the clerk and kept of the several important objections and bills of exception taken by their counsel; that counsel only discovered this after judgment and sentence was imposed and the district court had lost jurisdiction. If the district judge gave instructions to the clerk to take down the facts, counsel had the right, and it was their duty to have supervised and verified at the time the entries made by the clerk; they had the right to have the entries made by the clerk read in open court as made and to have had the same enlarged and modified if they were deemed by them insufficient or inaccurate. It was no part of the judge's duty to do this for counsel; it was the duty of counsel to know at the time what was done by the clerk and they could not postpone finding out as late as they admit they did, what the situation was; they had it in their power to have known, and they should have done so.

Counsel complain in their brief that the district judge, in his addenda to the different bills should have made any recitals as to any fact not occurring at the very time of the decision upon the objections made; that the correctness of the rulings should be tested by the state of facts existing at that time.

It has been the constant practice of the district judge to mention in the per curiam to the bills of exception any fact which occurring after its rulings would go to show that the rulings, even if erroneous, had become harmless or have been waived. Our reports are full of cases where this court has refused to reverse judgments in criminal cases, for the reason that the error assigned was harmless or had been waived.

In this state the records in criminal cases are very meager, as the Supreme Court deals only with questions of law. There should obviously be some method by which the appellate court could come to a knowledge of the harmlessness of the errors if any were committed in the district court. Either the judge should mention such facts or the district attorney should be afforded an opportunity to mention them. Were this not so, the greatest criminals might be released on totally insufficient grounds. If the judge in his addenda to the bills should state any fact injurious to the defense or unwarranted, defendant is afforded an opportunity for correction in a motion for a new trial, and he should avail himself of that remedy. State v. McCarthy, 43 La. Ann. 547, 9 South. 493; State v. Spillman, 43 La. Ann. 1002, 10 South. 198; State v. Elia, 108 La. 555, 32 South. 476.

We find no good grounds for reversing the judgment appealed from, and it is hereby affirmed.