Marshall, C. J.
 

 The first assignment of error relates to the sufficiency of the proof. It is claimed that, while the court correctly charged that the defendant could only be convicted if it should be found that the state had proved every element of the crime beyond a reasonable doubt, the proof nevertheless was so meager and so full of doubt that the jury must have disregarded the rule.
 

 Ordinarily this court will not consider the mere weight of evidence on review of the record of a trial below
 
 (Frate
 
 v.
 
 Rimenik,
 
 115 Ohio St., 11, 152 N. E., 14;
 
 Cole
 
 v.
 
 McClure,
 
 88 Ohio St., 1, 102 N. E., 264;
 
 Stewart
 
 v.
 
 Gordon,
 
 60 Ohio St., 170, 53 N. E., 797;
 
 Ford
 
 v.
 
 Osborne,
 
 45 Ohio St., 1, 12 N. E., 526); yet, where the particular case is of such character that the law requires a higher quality and a greater quantity of evidence than is sufficient in ordinary eases, and where a verdict is supported by a preponderance of the proof, this court will look to the record to ascertain whether or not the rule has been disregarded. We have therefore laboriously examined this record, and have no hesitation in saying that there was abund
 
 *546
 
 ant evidence which, if believed, would convince the average mind of the defendant’s guilt beyond a reasonable doubt. It is the province of the jury to determine the credibility to be given to the various witnesses, and it may be conceded that the jury is better able to make this determination by reason of having heard the witnesses and observed their demeanor.
 

 The defendant, Atkins, was somewhat evasive in his answers, and contradicted witnesses for the state, who were apparently reputable men, some of whom held official positions. His testimony on the witness stand was in many respects contradictory of statements made when arrested, and was directly contradictory to his signed statement. Measuring the testimony pro and con by the cold pages of the record, no reason is perceived why the testimony of the witnesses for the state should not be believed, and many reasons appear for not believing the statements of the defendant in his own defense. The defendant was guilty of unlawfully riding on a freight train. He was guilty of a trespass upon private property. He was guilty of attempting to steal apples, and he was guilty of carrying concealed weapons. In addition to this, it appears that he had a criminal record, and had served several sentences of imprisonment for misdemeanors.
 

 One of the reasons urged by counsel for defendant, on the insufficiency of the evidence, is that the officer was shot through the heart, and that it would have been impossible, therefore, for him to shoot the defendant thereafter, from which it is
 
 *547
 
 argued that the officer must have fired the first shot. The undisputed testimony is, however, that the officer walked some distance before he finally fell. It might or might not be true that he could not have fired at the defendant after being shot through the heart. Many circumstances, on the other hand, are conceivable which would have justified the officer in shooting first. The jury, having the right to draw all reasonable inferences from the testimony adduced, may have believed that he suddenly found the defendant crouched in the grass aiming a deadly weapon. Under such circumstances the officer would not be required to wait until he was shot before taking any measures to defend himself. This assignment of error must therefore be overruled.
 

 A second assignment of error relates to the refusal of the court to submit a special request to charge, to the effect that the officer had no right to make the arrest, unless he had complied with Section 9153 of the General Code, requiring him to wear in plain view a metallic shield with the word “Police” and the name of the railroad for which he is appointed inscribed thereon. It is true that this section prescribes a duty which the policeman should perform. It does not affirmatively appear by the record that he was wearing such a shield. If he was not, he was omitting a duty imposed upon him. It does not follow, however, that this omission rendered all of his acts unlawful. If Atkins had been near enough to Malone to see whether or not he was wearing a shield, and did not see such a shield, it might have a strong bear
 
 *548
 
 ing upon Atkins’ knowledge of his being in fact a policeman. Whether or not he was in fact wearing the shield can have no bearing on the case, because it appears by the testimony of witnesses that Atkins knew, or at least believed, that he was a policeman, and that it was his intention to use his gun if the policeman sought to interfere with him. The record clearly shows that Malone had a commission, and therefore had authority to make the arrest. Atkins knew or believed that he was a policeman, and it is evident from the testimony of his companions that he did not intend to submit to arrest. The fact that Malone, at the time of attempting to make the arrest, was not upon the premises of the Baltimore & Ohio Railroad Company is not important. Atkins had been riding on the train, and it is apparent from this record that Malone saw him get off of the train. He therefore had a right to pursue him into the cornfield and to use reasonable force in arresting him. The verdict rendered by the jury makes it clear that the jury believed that he was not using more force than necessary, and that Atkins resisted arrest by shooting after having previously declared his intention to do so. The omission to wear the shield could only be important in the absence of knowledge or belief on the part of Atkins that he was in fact a commissioned officer.
 

 Statistics show that crime has become one of the safest and most lucrative enterprises in which the youth of this period can engage. Crime statistics are always measurably inaccurate, and yet it is certain that only a small proportion of crimes result
 
 *549
 
 in punishment of the offender. The crimes of burglary, robbery, and other crimes against the person have become safe because of a feeling on the part of the victim that the offender will kill if resistance is offered, and that by tamely submitting his life at least will be spared. In recent years another method of rendering it safe has been found, viz., by killing and terrorizing public officials, enforcement officers, and even jurors. In Ohio alone 25 officers have been murdered in the discharge of their duties within 18 months. The abnormal number of unlawful killings of police officers does not, of course, reflect upon the guilt or innocence of the defendant in the instant case, but the situation is such as not to encourage resort to technicalities or refinements of reasoning in seeking a justification of such offenses. Section 12402-1, General Code, is a legislative response to tendencies prevalent in recent years to unlawfully resist arrest, and to the further tendency on the part of offenders to make themselves the sole judges of the lawfulness of the arrest and the authority of the officer. The beneficent provision of this statute would be wholly lost, if it were to be administered by technicalities instead of reasonable rules. This assignment of error must therefore be overruled.
 

 The third and last assignment of error we shall consider relates to the claim of the defendant that he did not have a fair trial, because he was denied the right to have his counsel interview his companions Otey and Salisbury, who were then held in jail as witnesses to await the trial. The record discloses that an application was made to inter
 
 *550
 
 view the witnesses generally, without any conditions that the prosecuting attorney or the court or sheriff should he present at the interview. It is not claimed that the right to interview witnesses for the state being held in custody is expressly granted either by the Constitution or statute, but the most that is claimed is that it is impliedly included in the general provisions. The express constitutional guaranties include the right to meet witnesses face to face, and to have compulsory process to procure attendance of witnesses. Neither of these rights was denied defendant at the trial. It is not doubted that an interview with the companions of the accused would have facilitated the preparation of the defense. It might, on the other hand, have promoted a false and perjured defense. No constitutional provision or statute requires the court to permit free concourse between companions in crime. Separate statements involving partial confessions had already been secured, and no rule of law or dictate of fairness required that defendant should be permitted to frame an explanation which would place the state at a disadvantage.
 

 It should be stated at the outset that witnesses do not belong to the state any more than they belong to the defense. Both state and defendant were entitled only to have full and complete disclosure on the part of each and every witness of all facts within his knowledge.
 

 A refusal to grant an application made to a trial court to permit counsel for the accused to interview the companions of the accused who are then being held in jail as witnesses, which application
 
 *551
 
 does not request permission to interview the said witnesses in the presence of some one designated by the court, is not prejudicial when the testimony which it is claimed would have been developed by interviewing the witnesses was within the knowledge of the accused himself, and the additional testimony sought would have been cumulative to testimony adduced.
 

 Counsel for the accused are entitled to interview companions of the accused who by virtue of Section 13635, General Code, are being held in jail as witnesses, in the presence of the sheriff, or some one designated by the court.
 

 This assignment of error does not constitute grounds for new trial, unless prejudice to the accused has resulted from the refusal to permit his counsel to interview the witnesses in the jail.
 

 The principle involved in this branch of the discussion is not one of first impressions, for, while this court has never dealt with the subject, other courts have thrown some light upon it. In
 
 State
 
 v.
 
 Goodson,
 
 116 La., 388, 40 So., 771, the Supreme Court of Louisiana declared that there is no constitutional right on the part of an accused person to have his counsel granted a private interview with a third party then confined in jail, and jointly indicted, and who had not been subpoened as a witness. It appears in that case that the interview was desired for the purpose of getting information on behalf of the defense. In that case counsel for the witness did not consent that he be interviewed. But the case did not turn upon that point. The case was decided upon the principle that there
 
 *552
 
 is no constitutional right to interview witnesses under such circumstances, from which it follows that the court is invested with a discretion which does not become prejudicial error, unless that discretion is abused. In
 
 State
 
 v.
 
 Gosey,
 
 111 La., 616, 35 So., 786, a similar ruling was made.
 

 In
 
 State
 
 v.
 
 Storrs,
 
 112 Wash., 675, 192 P., 984, 197 P., 17, the Supreme Court of Washington considered this question, and declared that a person charged with a crime ordinarily has a right to talk with persons having any knowledge of matters which might be beneficial or detrimental to him, but that the matter is discretionary with the trial court, and there should be no reversal, except for an abuse of discretion. In the opinion in that case there is a discussion of authorities pro and con, from which the general rule is deduced that the trial court is invested with discretion. In support of that rule the following cases are cited:
 
 Williams
 
 v.
 
 State,
 
 53 Fla., 89, 43 So., 428;
 
 Hudson
 
 v.
 
 State,
 
 137 Ala., 60, 34 So., 854;
 
 Robinson
 
 v.
 
 State, 8
 
 Okl. Cr., 667, 130 P., 121;
 
 State
 
 v.
 
 Goodson,
 
 116 La., 388, 40 So., 771.
 

 In
 
 Robinson
 
 v.
 
 State, supra,
 
 it was held not error to refuse to permit defendant’s counsel to interview an imprisoned witness, not in the presence of the sheriff. In
 
 People
 
 v.
 
 Mason,
 
 301 Ill., 370, 133 N. E., 767, the Supreme Court of Illinois affirmed the refusal of the trial court to allow counsel to interview the prosecuting witness alone. The same rule was declared by the Court of Criminal Appeals of Texas in
 
 Brewer
 
 v.
 
 State,
 
 95 Tex. Cr. R., 521, 254 S. W., 809.
 

 
 *553
 
 While the facts of all those cases are not entirely parallel to those of the instant case, and while it does not clearly appear in the instant case that counsel for defendant would have desired an interview in the presence of the court or sheriff or prosecuting attorney, it is apparently well settled by all the authorities that no constitutional right has been denied, and that the matter is one within the discretion of the trial court, which discretion may not be abused. Neither the trial court nor the Court of Appeals found any abuse of discretion, and, on examination of the record, this court finds none.
 

 This feature of the case may well be discussed from another angle. It is inconceivable that the companions of the accused would have knowledge of any facts which were not in possession of the accused himself. Inasmuch as the companions were themselves under suspicion, it is also conceivable that they would not have divulged any facts whieh would be likely to break down their version of the facts of the crime as they had already been related in their written statement. It is claimed that the companions had conspired to place the guilt .unjustly upon the accused. If so, it is certain that they would not willingly and voluntarily have divulged their version. If the accused was in fact “framed,” it is only an example of the misfortune of having chosen bad company. The particular information which it is now claimed would have been divulged by an interview with Otey and Salisbury related to the number of cartridges in the pistol carried by the accused. Whatever importance may
 
 *554
 
 have attached at any time to the number of filled cartridges in the pistol, such importance must have been apparent during all the period of preparation for the defense, and the accused must have known before the trial, as well as he knew after the trial, whether his testimony on that point could be corroborated by witnesses in Steubenville. He was not justified in waiting until he learned what the testimony of Otey and Salisbury would be on that point before seeking corroboration of his own version.
 

 It does not appear, therefore, from a careful study of this record, that a new trial would afford the opportunity to produce any testimony which could not have been discovered with reasonable diligence before the trial without interviewing Otey and Salisbury, or any testimony which would not be strictly cumulative in its nature. No prejudice is therefore apparent.
 

 This assignment of error, like the second assignment, is purely technical, and must therefore be overruled.
 

 It follows that the judgments of the lower courts are affirmed.
 

 Judgment affirmed.
 

 Day, Allen and Kinkade, JJ., concur.
 

 Robinson and Matthias, JJ., dissent