**STATE v ANTHOULIS et**

Ohio Appeals, 7th Dist, Mahoning Co

Decided April 15, 1939

William Ambrose, Youngstown, for appellee.

Nolan & Chestosky, Steubenville, and James S. Cooper, Youngstown, for appellants.

## OPINION

By CARTER, J.

The parties will be designated as the state and defendants.

On the nineteenth day of April, 1938, the grand jury of Mahoning county returned an indictment against Sollie Hart, Herb Ross, John Anthoulis, Thomas Galati and John A. O'Boyle charging that they maliciously, unlawfully and feloniously united, combined and conspired together for the purpose and with the intent to fraudulently and maliciously abduct, decoy and entice away one Roy Happy) Marino; that in pusurance thereof and to effect the object thereof they did unlawfully, maliciously and fraudulently abduct, decoy and entice away Marino, and while so abducting, decoying and enticing away Marino and while so keeping, detaining and having control and possession of him and during the period of said abduction, detention and enticement did kill and murder Marino by shooting him with a revolver, contrary to §13386, GC.

All of the defendants with the exception of O'Boyle were in due time apprehended and entered their pleas of not guilty. Separate trials had as to each resulted in conviction under this section of the General Code. In each case the triers recommended mercy.

The first case tried to the court and jury was that of John Anthoulis, the second that of Herb Ross, the third that of Sollie Hart, who waived a jury and submitted his case to three Common Pleas Judges, to-wit: the Honorable George H. Gessner, the Honorable J. H. C. Lyon, local judges, and the Honorable Fred F. Wolf, visiting judge.

The fourth case, that of Thomas Galati, was tried to the court and jury. O'Boyle has not as yet been apprehended. Three of the defendants, to-wit, John Anthoulis, Herb Ross and Sollie Hart, were represented by the same counsel. Following their convictions, motions for new trials were made, which motions were overruled by the court, and each sentenced to the penitentiary for the period of his natural lifetime. Appeal is prosecuted to this court.

In this court the three cases were presented together. Errors urged in each are of similar import. However there are errors urged as to some of the defendants and not urged as to others. The evidence discloses that Anthoulis and O'Boyle were apparently operating a slot machine business in the city of Steubenville, Jefferson county, Ohio; that Ross, Hart and Galati in some way became interested in this business; that about the middle or latter part of July, 1937, Anthoulis and O'Boyle employed one Hagert to work for them as a mechanic and utility man repairing slot machines and driving Anthoulis about to collect money taken in by the slot machines. It further appears that Hagert was later introduced to Hart, and a little time after his employment he saw Ross, Hart and Galati about the place of business of Anthoulis and O'Boyle, in Steubenville.

The errors urged are many. Anthoulis urges that the trial court was in error in the following respects:

1. The trial court erred in refusing to grant defendant's application for a commission to take the deposition of Eddie Hagert, a witness in said cause, who it is claimed was at the time of the filing of the application confined in Mahoning county jail.

2. The trial court erred in refusing to grant the application of the defendant for the right to interview Eddie Hagert, a companion of the defendant and a witness in the cause, who it is claimed was confined at the time of filing the application in the Mahoning county jail.

3. The verdict is not sustained by sufficient evidence.

4. The verdict is contrary to the weight of the evidence.

5. The trial court erred in admitting incompetent evidence offered by the state to which objection was made and exceptions taken.

6. The trial court erred in rejecting competent evidence offered by defendant.

7. The trial court erred in overruling the motion of defendant for a directed verdict made at the close of the state's case and at the close of all the evidence.

8. The state failed to prove that the offense charged in the indictment in the cause was committed within the county of Mahoning and state of Ohio.

9. The trial court erred in overruling the motion of defendant to exclude evidence of certain witnesses which motion was made at the close of the state's case and at the close of all the evidence.

10. The court erred in overruling the motion of the defendant to exclude physical exhibits offered by the state and admitted by the trial court.

11. Misconduct on the part of the prosecuting attorney in propounding leading questions suggestive of the answers sought.

12. Misconduct on the part of the prosecuting attorney in uttering remarks in the presence and hearing of the jury over the objection of defendant which were prejudicial to defendant and prevented him from having a fair trial.

13. The court erred in overruling the motion of defendant for the withdrawal of a juror and the declaration of a mistrial because of misconduct on the part of the prosecuting attorney.

14. The verdict of the jury and judgment of the court are contrary to law.

15. The jury was influenced by passion and prejudice.

16. The court erred in its general charge to the jury.

As to the first error urged—on May 10, 1938, Anthoulis, Ross and Hart filed in the Common Pleas Court of Mahoning county an application for a commission to take the deposition of Eddie Hagert, Hagert being one of the chief witnesses to be called by the state in the trial of these cases. It is urged that Hagert was a material witness confined in the Mahoning county jail under commitment issued by the prosecuting attorney. This application was filed pursuant to the provisions of §13444-11, GC. This section provides:

"When an issue of fact is joined upon an indictment and a material witness for the state or the defendant resides out of the state, or residing within the state is sick or infirm, or about to leave the state, or is confined in prison, the prosecuting attorney or the defendant may apply in writing to the court for a commission to take the depositions of such witness. The court or judge may grant such commission and make an order stating in what manner and for what length of time notice shall be given to the prosecuting attorney or to the defendant, before such witness shall be examined. Such commission shall not be granted and such order shall not be made until there is filed with the clerk of said court, an affidavit stating in substance the evidence sought to be secured by deposition, and that it is competent,

relevant and material, and it shall appear to the court that such evidence is relevant, competent and material." (Emphasis ours).

There is no statement in the application that Hagert could not or would not be present at the trial. See form suggested in **14 O. Jur. 17, §11.**

This application was assigned for hearing the following morning, May 11. Witnesses were called, to-wit the chief jailer of Mahoning county, who testified that he had in jail an Arthur Snyder and held him under order of the prosecuting attorney: that he had a commitment for him from the prosecutor; that he was committed on February 27, and further testified that on that date, to-wit May 11, 1938, Snyder was in jail. It appears that the Snyder referred to was really Hagert. Defendants made a motion for continuance of the hearing for the purpose of preparing and filing an affidavit as required by §13444-11, GC. A continuance was allowed by the court, and on May 12, 1938, the following affidavit was filed by the defendants:

"Hugo F. Chestosky, being first duly sworn according to law, deposes and says that he is one of the attorneys for the defendants, Sollie Hart, Herb Ross and John Anthoulis; that he has filed an application in the Common Pleas Court of Mahoning county, Ohio, for an order granting said defendants a commission to take the deposition of one Eddie Hagert; that the evidence sought to be secured by said deposition will consist of evidence concerning the knowledge of said Eddie Hagert, if any he possesses, respecting the formation or existence on the ninth day of September, 1937, of any conspiracy by the said defendants to abduct, decoy or entice away one Roy (Happy) Marino as alleged in the indictment in the cause herein."

This was signed and sworn to by Mr. Chestosky.

On May 13, 1938, further proceedings were had on this application. The court stated in passing on the application:

"Before going any further the court desires the record to show if there was anyone by the name of Snyder or Hagert confined in or residing in the county jail as claimed by the defense, he or they were not confined under any order of this or any other court of this county, there having been no witness recognized under §13438-13 or any proceedings under that section by this or any other court of this county in reference to this indictment or any other indictment involving the defendants. As I understand it this motion is now submitted.

"Mr. Chestosky: Yes.

"Court: I do not think the defendants bring themselves within §13444-11 in a number of respects and the motion is overruled."

However, before passing on the application, the trial court called to the stand chief deputy sheriff Wingert, and made inquiry as to whether there was anyone at that time in the county jail by the name of Hagert or Snyder. The deputy replied not to his knowledge. The court then made inquiry as to who would have that knowledge, and the witness stated the chief jailer. The chief jailer was called to the stand, and the same question was propounded to him and his answer was, "No." The chief jailer was cross-examined by defense counsel, and the record discloses that Snyder or Hagert was discharged May 11, at twelve o'clock noon; that he was ordered released by the prosecutor. The record further discloses that on Snyder's release he was taken to the Albany hotel in Youngstown and other removals were apparently made of Snyder.

We are of opinion that the court did not abuse its discretion in overruling this application. First, we are of the opinion that Snyder, alias Hagert, was not confined in prison as contemplated in this section. The record, by

statement of the court, indicates that Snyder was not committed to the county jail by order of court, and there is no evidence in the record of any legal commitment, but that the prosecutor ordered Snyder to be kept in custody of the jailer as a witness for the state. We take it that the prosecutor had no authority to confine the witness without proceeding under the provisions of §13438-13, GC. Snyder was placed in the custody of the jailer at the request of the prosecutor only, which commitment in no way could be classed as a legal commitment, and no such authority has been cited to this court. In 14 O. Jur., 16 and 17, §11, the author states

" * * * the granting of the commission rests in the discretion of the court, it would seem to be proper, in all cases, to state in the application that the probable effect of the existence of the particular statutory ground assigned as a reason for taking the deposition would be to prevent the personal attendance of the witness at the trial in court, since it seems to be the policy of the law, in view of the nature of the grounds specified for taking depositions in criminal cases, to permit such taking only where there exists some degree of probability that the attendance of the witness at the trial can not be secured. In this respect, the taking of depositions in criminal cases differs from their taking in civil actions."

However, that may be, under the provisions of §13444-11, GC, discretion is vested in the court, and this court will not disturb discretion so vested unless abused. The statute provides that the court or judge may grant such commission. Under the circumstances in this case we think there was no abuse of discretion in this action of the trial court. In th case of **Yunker v State,** 3 Oh Ap 157, the court stated in commenting on §13668, GC, now §13444-11, that the granting of such commission rests in the discretion of the trial court and that "a reviewing court would

therefore not be justified in reversing the ruling of the trial court thereon unless it clearly appeared from the record that the trial court had abused its discretion in refusing such request."

We might further observe that Hagert testified on behalf of the state in each of these cases, so that defendants had ample opportunity to cross-examine Hagert and were not deprived of the privilege of making him their witness if they saw fit.

A perusal of the Constitution discloses the following in making provision for taking depositions in criminal cases:

**Sec. 10, Art. 1.** " * * * provision may be made by law for the taking of the deposition by the accused or by the state, to be used for or against the accused, of any witness whose attendance can not be had at the trial * * * ".

It was not the intention of the people of the state in adopting this provision to permit exploration into the evidence of the accused or of the state, but to perpetuate testimony which would not be available at the time of trial. As above indicated the witness was present at the trial of these cases and testified. We hold there was no prejudicial error in this regard.

This error is urged only as to the defendant Anthoulis for the reason that in the subsequent trials of Hart and Ross the knowledge sought to be obtained through the taking of the depositions was secured in the Anthoulis trial, Anthoulis having been tried first.

The second error urged is that the court refused to grant defendant Anthoulis the right to interview Hagert, alias Arthur Snyder, and John Barber, confined in the county jail, Mahoning county, that Hagert and Barber were companions of defendants.

The following application was filed on the 11th day of May, 1938, with the clerk of the Common Pleas Court.

"Now come the defendants, Sollie Hart, Herb Ross and John Anthoulis

and represent to the court that Eddie Hagert, alias Arthur Snyder, and John Barber, are confined in the Mahoning county jail, Youngstown, Ohio; that Eddie Hagert, alias Arthur Snyder, and John Barber, are companions of the defendants, and that counsel for the defendants have been denied the right to interview them.

"Wherefore defendants move the court for an order commanding the sheriff of Mahoning county, Ohio, to permit said defendants' counsel Hugo F. Chestosky and James Cooper to forthwith interview the witnesses hereinbefore named in the presence of the sheriff, prosecuting attorney or some other person designated by the court."

This application was filed under and by virtue of the provisions of §13438-13, GC, and was denied by the court.

In support of their contention counsel for defendants cite the case of **Atkins v State, 115 Oh St 542, 155 N. E., 189.** The court held in that case:

"Counsel for the accused are entitled to interview companions of the accused who by virtue of §13635, GC, are being held in jail as witnesses, in the presence of the sheriff, or someone designated by the court."

While the court announced the above proposition of law, nevertheless in the opinion at page 553 the court says that the granting of such right is one within the discretion of the court, which discretion may not be abused.

We might further suggest that it is the claim of defendants that Hagert and Barber were companions of defendants; assuming this to be true the court said in the Atkins case, supra, at page 553:

"This feature of the case may well be discussed from another angle. It is inconceivable that the companions of the accused would have knowledge of any facts which were not in possession of the accused himself."

Further, the record does not disclose

that Hagert or Barber were confined in the county jail by virtue of the provisions of §13635, GC, now §13438-13, or by any other legal commitment.

We think that, under the circumstances in this case, as disclosed by the record and the reasoning of the court in the Atkins case, supra, the court did not abuse its discretion in refusing this application.

The third, fourth and seventh grounds urged, that the verdict is not sustained by sufficient evidence, that it is contrary to the weight of the evidence, and that the court erred in refusing to direct a verdict in favor of defendants, will be disposed of collectively.

First, it is claimed that a conspiracy has not been established by the state as charged in the indictment. And it is urged that the only proof of conspiracy is found in the testimony of the witness Hagert. Hagert testified he overheard conversations which took place in the business establishment of this slot machine concern in Steubenville. The first conversation, as testified to by Hagert, was between Anthoulis, Ross, Hart, Galati and O'Boyle while waiting to take Anthoulis in a car to collect money. Hagert testified he heard Anthoulis say to the other men in the room: "We have had trouble with him before and as long as that little rat * * * lives we will have trouble with him again, and we will have to go and take care of him. He double-crossed us once before and we will have trouble with him again." That Marino's name was mentioned in the conversation. To which Hart replied: "What are we going to do about it?" Hagert testified further that these men were trying to reach Marino in Youngstown by telephone. Some testimony has been introduced by the defense that this attempt to reach Marino by telephone was untrue. Two or three days later Hagert testified he heard another conversation in which Hart said, "Herb, Tommy and I got a date with Marino for Thursday," and the record discloses that Marino was apparently abducted

on Thursday night of the ninth of September, 1937, and his body found on the morning of the tenth of September, 1937, in Columbiana county, having been murdered.

There is some evidence in the record to the effect that Hart and Ross were not present in the office at that time. If this evidence is competent certainly a jury question was presented. In the light of this testimony and other facts and circumstances as disclosed by the record we are of the opinion that the juries could, and properly did, find that a conspiracy between these defendants had been established as claimed by the state, and it is immaterial whether the conspiracy was formulated in Jefferson county or Mahoning county. A number of cases have been cited to the effect that such or similar statements as above are not sufficient to establish a conspiracy. However we are of opinion that a jury question was presented.

The actions of the defendants following the commission of the crime charged is strong evidence of a prior conspiracy. These facts taken in connection with the testimony of Hagert constitute evidence sufficient for the juries to conclude that a conspiracy existed between the defendants charged in the indictment to commit the offense charged. The facts to which we refer following the murder of Marino are: The purchase of an automobile in Detroit, Michigan, to which place Ross and Hart went; O'Boyle and Anthoulis sent them money to purchase the Michigan car; the changing of the upholstery in the auto in which Marino apparently was murdered, which contained, as testified, blood stains, and the substitution of the upholstery from the Michigan car; the place in which the upholstery was sought to be changed; the disappearance of one of the two cars; the concealment of the license plates of the Michigan car; in fact the attempt made by these men to cover up and conceal the crime is corroboration of the testimony of Hagert as to the formation of a conspiracy as claimed by the state. It is also

to be borne in mind that there is testimony in the record that on the night of the abduction two men were seen near the Marino home in a dark car bearing the license number of the Galati car.

While the better rule to follow is to establish a prima facie case of conspiracy before testimony of a co-conspirator is admitted, nevertheless, we are of opinion that, if during the entire trial there is evidence outside of the testimony of the co-conspirator which establishes a prima facie case of conspiracy, there is no prejudicial error in the court admitting the testimony of a co-conspirator even though it be prior to establishing, aliunde, prima facie evidence of a conspiracy, and it appears that many of the cases in Ohio hold that a prima facie case of conspiracy should be first established before the court permits testimony of a co-conspirator. However there are many cases outside of Ohio holding that concealment constitutes a part of the conspiracy. As stated in 2 Wharton on Criminal Evidence (11 Ed.), 1205, Section 715:

"The acts and declarations of a conspirator are admissible against a co-conspirator when they are made during the pendency of the wrongful act, and this includes not only the perpetration of the oeffnse, but also its subsequent concealment. The theory for the admission of such evidence is that persons who conspire to commit a crime, and who do commit a crime, are as much concerned, after the crime, with their freedom from apprehension, as they were concerned before the crime, with its commission; the conspiracy to commit the crime devolves after the commission thereof into a conspiracy to avoid arrest and implication. It has also been held that a conspiracy to commit a crime endures for the purpose of escape, the concealment of evidence, or the defeat or prevention of prosecution."

A number of other cases to the same

or similar effect are cited in the state's brief. However that may be, was Hagert a co-conspirator? We are of the opinion that under the evidence in this case he was not. Hagert is in no way charged with this crime by the state. There is no evidence that he entered into or in any material way aided in the establishment or the carrying out of the purposes of this conspiracy. Hagert was employed by at least some of these defendants. Nowhere did he actively participate in the taking of the life of Marino. True he changed the upholstery in the car, but by order of his employer, and did other things by order of his superior. However we do not think these things were done for the purpose and intent, on his part, of concealing the offense committed, but in furtherance of his duties as an employee of defendants. If we are correct in this conclusion then the rule as to declarations of a co-conspirator has no application. Hagert being an ordinary witness called by the state to aid in the establishment of a conspiracy and in the conviction of defendants.

Corroborating evidence is found in the record, other than the testimony of Hagert, of the claimed conspiracy, that implicates these defendants.

The court did not err in refusing to direct verdicts in these cases. Neither are the verdicts of the juries and judgments thereon contrary to the weight of the evidence or contrary to law. We will not prolong this opinion to point out in detail the evidence submitted on behalf of the state. Suffice it to say that factual questions were presented for the consideration and determination of the juries. The triers of the fact in each case upon the evidence submitted found that all the material allegations of the indictment had been established by that degree of proof required in criminal cases. We are not inclined to disturb these verdicts as being against the manifest weight of the evidence or contrary to law.

The sixth error urged is to the effect that competent evidence offered on behalf of defendant was refused. No particular instances are pointed out to the court, and it is not strenuously urged that such refusal was prejudicial to the extent of warranting a reversal of this case on that ground. We therefore pass this assignment without comment.

It is further urged that the state failed to establish that the offense charged in the indictment was committed in Mahoning county, Ohio. First of all venue is ordinarily a jury question. The juries were instructed by the trial court that if the act of abducting, decoying or enticing away Marino occurred in Mahoning county, Ohio, the prosecution would be properly laid in Mahoning county, and that it was immaterial in what county the killing, if any, took place, or in what county, if any, the conspiracy was entered into. We think that this was a correct instruction as to venue, and the juries found that such enticing, abducting and decoying did take place in Mahoning county, and that the defendants were the guilty parties. The gravamen of the offense charged in the indictment is the forcible, or fraudulent, malicious abducting, carrying away, decoying, enticing or kidnapping of another person. This is an abduction or kidnapping statute. It is so designated in §13386, GC. This is the offense the Legislature had in mind in its enactment and if, while in the act, a person or persons kill or cause the death of another by means of wounds, or violence, or any personal injury inflicted upon him; or threats of death, or great bodily harm; or exposure to weather or disease; or neglect or failure to provide proper food, clothing, shelter or medical attention; or any other means inflicted or occuring during the period of such detention, they are guilty of murder in the first degree, and shall be punished by death, unless the jury trying the accused recommends mercy, in which case the punishment shall be imprisonment in the penitentiary during life.

If enticing, abducting, decoying or

kidnapping constitutes the offense designated in this section, and if such abduction, decoying, carrying away, or enticing, as claimed in the case at bar, occurred in Mahoning county, then venue was properly laid in Mahoning county, and the state was compelled to establish that fact as one of the vital and material averments of its indictment. Was the evidence in the record sufficient for the juries to so find? The evidence in this regard is to the effect that Galati's car on September 9th, was in Youngstown, Mahoning county, Ohio, at or near the place where Marino was last seen alive. This car bore Galati's license number. The occupants thereof attempted to conceal their identity. Hagert testified that Hart said that "Herb, Tommy and I got a date with Marino for Thursday." Marino's car was found abandoned in Youngstown near the scene where the Galati car was noticed by the two boys who took the license number. He was called from his parents' home on the evening of his disappearance and conversed at the time with the occupants of a large dark car. Immediately thereafter he left his parents' home in Youngstown and drove away in his own car. Thereafter he was seen telephoning in a drug store in Youngstown, and shortly thereafter was seen in a beer garden located a short distance from the place where the Galati car was seen. All these facts and circumstances coupled with the testimony of Hagert certainly presented a jury question as to whether the offense charged in the indictment was committed in Mahoning county. The evidence we think was sufficient to justify the jury in concluding, beyond the existence of a reasonable doubt, that the offense of abducting, decoying and enticing was committed by these defendants in Mahoning county.

The next error urged is that the trial court erred in overruling the motions of defendants to exclude evidence of certain witnesses, which motions were made at the close of the state's cases and at the close of all the evidence, and further that the trial court erred in overruling the motions of the defendants to exclude physical exhibits offered by the state and admitted by the trial court. These claimed errors are predicated largely on the theory that Hagert was a co-conspirator and that evidence aliunde was not produced by the state prior to the introduction of Hagert's testimony. This contention has already been discussed in this opinion, and no further comment will be made here. There was no prejudicial error committed by the trial court in this regard.

The next error urged is misconduct on the part of the prosecuting attorney in propounding leading questions to the witnesses for the state suggestive of the answer sought. No error is urged in this regard in the trial of the defendant Hart. However, such is urged in the Anthoulis and Ross trials. No particular instances are cited of claimed violation of this rule of evidence, and it could hardly be expected that this court will minutely search every question in this record to determine whether this complaint has foundation. It is admitted by counsel for appellants that such questioning rests largely in the discretion of the trial court, and that reviewing courts are reticent to disturb judgments on this ground alone. It is also admitted that this complaint standing alone would not be sufficient to warrant a reversal, but should be considered in connection with the whole case.

Misconduct is also urged on the part of the prosecuting attorney in uttering prejudicial remarks in the presence of the juries whereby defendants were prevented from having fair trials, and refusal of the trial court to permit the withdrawal of a juror and continuance of the cases because of such misconduct. One of the remarks called to our attention which was propounded by the state to Hagert was as follows:

"Q. You have told this jury that while you worked on the car replacing the upholstery you noticed a bullet hole

in the top of the car through the roof of the car."

It appears that Hagert had not so testified up to this point. However such question is not prejudicial for on objection the court sustained same and Hagert then testified that such was the case.

We have examined the other complaints in this regard and find that there was no prejudicial error committed by the trial court. in these respects, and that the court was not in error in refusing the withdrawal of a juror and continuance of the cases.

It is further urged that the verdicts and judgments are contrary to law. The matters urged under this assigned error have been considered and passed upon heretofore in this opinion and impel us to the conclusion that the verdicts and judgments thereon are not contrary to law.

It is further urged that the jury was influenced by passion and prejudice. Each of the four defendants already tried has been found guilty. The court acting as triers of the fact found one of these conspirators guilty on substantially the same evidence, and certainly we could not say that the court trying the Hart case, consisting of three judges, was influenced by passion and prejudice in arriving at its conclusion. There is no merit in this contention.

The sixteenth error urged is that the trial court erred in its general charge to the jury. The particular error urged has reference to the following statement by the court in its general charge:

"A juror should not turn a deaf ear to the view of his fellow jurors and without listening to the views and arguments advanced obstinately stand upon his own opinion regardless of what may be said by his fellow jurors. It must be the object of all of you to arrive at a common conclusion."

This error is urged on behalf of Anthoulis and Ross only.

12 O. Jur., 604, §584, is cited wherein the author says no single juror is bound to give of his own conviction of proof and adopt the opinion of others. However the court said further in its charge:

"* * * in constituting a jury of twelve persons the law contemplates that each and all of you shall give his individual consideration to and judgment upon the evidence. the rules. of law pertaining to the case, and the rules of evidence explained to you in these instructions and should be binding upon the individual conscience of each juror. It is the duty of the jurors to confer with each other and give careful consideration to the views expressed by any juror while you are considering this verdict."

The admonition of the court was to the effect that the jurors discuss the evidence and by this method reach a conclusion, and that no juror should disregard the discussions and reasoning of other jurors. The very purpose of twelve jurors to try criminal cases is to have their combined assistance and consideration in reaching a verdict. This in substance is what the court said to the jury. There was no error in this regard.

It is also urged that the court was in error in not charging murder in the first degree under §12400, GC; murder in the second degree under §12403, GC; manslaughter under §12404, GC; and that the court erred in limiting the same to §13386, GC, alone. This is a special statute dealing with decoying, abducting, enticing and kidnapping, and if defendants were not guilty of a violation of this section they were guilty of no other offense. They were charged with no other offense. Neither did this offense include nor the evidence warrant the court in charging the other offenses, urged.

We might further suggest that we find no request to the court by counsel to charge on these other offenses. In

the absence of such request, error can not be urged. See **Todor v State, 113 Oh St, 377, 149 N. E. 326.**

We have examined all of the errors urged and find none of so prejudicial a nature as to require a reversal of these cases. We might further suggest that the defendants should feel quite satisfied in not being impelled to pay the extreme penalty.

The judgment in each of the three cases is affirmed.

Judgments affirmed.

NICHOLS, PJ, & PHILLIPS, J, concur.