Zimmerman, J.
In Ms first assignment of error, the accused contends that the state failed to prove the corpus delicti of the offense charged; that an essential element of the crime of embezzlement is that the accused actually converted the money or property to his own use; that evidence of a demand, followed by a neglect or refusal to account, does not constitute proof of conversion; and that in the instant case there was no evidence of sufficient probative force to prove a fraudulent conversion of the money in question to the personal use and benefit of the accused.
The pertinent part of the applicable statute, Section 12467, General Code (111 Ohio Laws, 101), read as follows:
“Whoever, being an * * * guardian * * * of a person * * * embezzles or converts to his own use * * * anything of value which shall come into his possession by virtue of his * * * appointment * * * thereto, if the total value of the property embezzled * * * is thirty-five dollars or more, shall be imprisoned in the penitentiary not less than one year nor more than ten years * *
The gist of the crime of embezzlement is an intentional conversion of the money or property by the embezzler to his use, and to support a conviction there must be evidence of the requisite quality and quantity establishing such conversion. The authorities generally sustain this position. The rule is well stated in the case of Pilger v. State, 120 Neb., 584, 234 N. W., 403, 75 A. L. R., 297, as follows:
“ < * * * ^ is no£ ^he failure of the guardian to make settlement or pay over to his wards the amount of money found due them which constitutes the offense; it is the fact of his conversion of such money to his own use which renders him guilty of the crime defined by the statute upon which the information in this case *274 was founded. It is the use by the guardian, as his own, of the trust fund committed to his care which renders him criminally liable and for which a criminal prosecution may be maintained.’ ” See, also, State v. Baxter, 89 Ohio St., 269, 272, 104 N. E., 331, 52 L. R. A. (N. S.), 1019, Ann. Cas. 1916C, 60; 15 Ohio Jurisprudence, 608, Section 9.
This being a criminal prosecution, the burden rested on the state to prove beyond a reasonable doubt every essential element of the offense with which the accused was charged. And, although a conversion of property by a fiduciary may be shown by circumstantial evidence, the established rule is that this character of evidence alone will not warrant a conviction unless it excludes every reasonable hypothesis except that of guilt.
It therefore follows that to establish the offense of embezzlement or conversion under Section 12467, General Code, there must be proof, direct or circumstantial, beyond a reasonable doubt of the conversion or misapplication of property by the accused for his use, benefit or gain.
Now, there is not the slightest doubt that the accused was a recalcitrant and unreliable guardian whose conduct as such can not be defended or condoned, but was his guilt as an embezzler established by that degree of proof which the law demands?
The judge of the Probate Court of Lucas County became a witness against the accused on the trial of the instant case and testified that soon after the appointment of Urbaytis as guardian he falsely informed the court that he was collecting but $50 per month from the insurance company and was turning this sum over to his ward in monthly payments, whereas he had received a check from the insurance company for the full amount of the policy and had cashed the check, receiving currency therefor; that Urbaytis neglected to file *275 an inventory as guardian although requésted to do so; that on August 16, 1949, a citation was served on Urbaytis to show cause why he, as guardian, should not proceed with the guardianship; that on September 9, 1949, Urbaytis filed an inventory showing the collection of the proceeds of the insurance policy in the sum of $6,000; that the court thereupon ordered the guardian to give an additional bond in the sum of $11,000 or show cause why he should not be removed; and that a hearing was had in the Probate Court on September 19, 1949, at which hearing Urbaytis and his then counsel were present.
The probate judge testified further that at that time counsel for Urbaytis in the latter’s presence stated that Urbaytis was not in a position to comply with the court’s order.
Thereupon, the court ordered the removal of the guardian and payment of $6,000 into court and immediately appointed Carl J. Marlow as successor guardian.
On October 11, 1949, the successor guardian filed in the Probate Court a complaint against Urbaytis for concealing assets, and a hearing was had on October 21, 1949, at which Urbaytis was present. A transcript of the testimony at this hearing was taken and the same was received through the probate judge as evidence in the instant ease. It shows that Urbaytis was sworn and made a statement, which he read from a paper, to the effect that on his examination of the •record of the administration of the estate of John Tyler, Jr., father of Yvonne Gloria Tyler, in the Probate Court at Detroit he found that although Yvonne’s name had been typed in as one of the next of kin of John Tyler, Jr., her name was scratched out with ink, whereupon he concluded that the other three children of John Tyler, Jr., would try to get the insurance proceeds due Yvonne away from her. The accused stated *276 further that he gave the money in cash to Yvonne in the presence of her mother (except about $160 expenses but took no receipt therefor). Neither Yvonne nor her mother appeared and testified at that hearing.
On October 21, 1949, the Probate Court found that Urbaytis was guilty of having concealed, embezzled or conveyed away the sum of $6,000 received by him from the Prudential Insurance Company of America, while acting in the capacity of guardian of the estate of Yvonne doria Tyler, and judgment was rendered against Urbaytis for $6,000 plus a ten per cent penalty, or a total of $6,600, and the successor guardian was ordered to collect this sum from Urbaytis. Urbaytis did not pay upon demand, whereupon the indictment in the present action was returned.
In the ease at bar, Urbaytis did not offer himself as a witness. Yvonne Tyler and. her mother, residents of the city of Chicago, who had not theretofore appeared and testified in any of the proceedings in the Probate Court, presented themselves as wi tnesses for the accused. Yvonne testified that she had received the $6,000 in cash less a small amount deducted for' expenses from her uncle, Urbaytis, in August of 1949 and the settlement made was entirely satisfactory to her; that she kept such money at her grandmother's home in a tin box for some months; that afterwards she and her mother moved to Chicago and she carried the major portion of the sum received with her; and that she had since been married and had expended the entire amount for various purposes before the trial of the instant case. Her mother testified that, she was present and had seen Urbaytis turn the money over to Yvonne.
The court found the accused guilty as hereinbefore stated.
The state’s case against the accused was built wholly on circumstantial evidence limited almost ex *277 clusively to proof of what had transpired in the Probate Court, which it must be conceded reflected no credit on Urbaytis. However there was no direct evidence that he had appropriated or converted his ward’s funds to his own use or employed such funds to his own advantage. On the other hand, the accused produced two witnesses who swore positively and unequivocally that he had delivered the funds to his ward, and it is to be noted that one of these witnesses was the ward to whom the funds belonged.
The trial court, as disclosed by an opinion filed in the case, disregarded in its entirety the testimony of Yvonne and her mother on the basis that it was a fabrication, pure and simple, to save a relative from conviction. Nevertheless, the fact remains that such testimony stands uncontradicted and unimpeached and constituted the only explanation in the case of what became of the $6,000.
By the terms of Section 13459-1, General Code, “the Supreme Court in a criminal case or proceeding, except when its jurisdiction is original, shall not be required to determine as to the weight of the evidence.” Under Section 13442-3, General Code, “a defendant in a criminal action is presumed to be innocent until he is proved guilty of the crime charged, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he shall be acquitted. ’ ’
Although in criminal cases the Supreme Court is not required to and will not ordinarily weigh the evidence, it will examine the record to ascertain whether the rule requiring proof of guilt beyond a reasonable doubt has been followed. See Atkins v. State, 115 Ohio St., 542, 155 N. E., 189, error dismissed, 274 U. S., 720, 71 L. Ed., 1324, 47 S. Ct., 590; State v. Petro, 148 Ohio St., 473, 76 N. E. (2d), 355, 5 A. L. R. (2d), 425.
This rule is stated in the first paragraph of the syl *278 labus of Cole v. McClure, 88 Ohio St., 1, 102 N. E., 264, as follows:
‘ ‘ On review of the record of a trial below, this court will not consider the mere weight of the evidence, but where the law requires in the particular case a higher quality and quantity of evidence than is sufficient in ordinary cases to support a judgment by the preponderance of proof, this court will consider whether ihe evidence attains to that high degree of probative force and certainty. (Ford v. Osborne, 45 Ohio St., 1, followed and approved.) ”
Of course, neither in this case nor in any other criminal case should a reviewing court substitute its judgment for that of the trier of the facts on questions of fact, but a majority of this court upon a perusal of the entire record is of the opinion that the evidence against the accused did not reach “that high degree of probative force and certainty” which the law requires to justify conviction.
The judgments of both the Court of Common Pleas and the Court of Appeals are reversed and the cause is remanded to the trial court with instructions to discharge the accused.

Judgment reversed.

Stewart, Middleton and Taft, JJ., concur.
Weygandt, C. J., Matthias and Hart, JJ., concur in the syllabus but dissent from the judgment.