Matthias, J.
The question for this court to determine is: Did the state adduce sufficient evidence, bearing in mind its burden of proving the defendant guilty beyond a reasonable doubt, to justify the trial court in overruling the motion for discharge of the defendant made at the close of the state’s case and renewed at the close of the evidence?
The direct and circumstantial evidence in the record in this case tends to show the following sequence of events:
The defendant drove a blue air-force Chevrolet sedan, license U. S. A. F.-834 and in good condition, after returning in it from Cleveland, Ohio, into the grounds of the A. 0. Smith Corporation on Laskey Road, just before 10:00 p. m. on May 14, 1952.
After remaining there until 10:25 p. m., he drove it from the premises in a westerly direction on Laskey Road.
When he approached the intersection of Laskey and Winona Roads, Winona Road running off Laskey Road in a northerly direction, he drove the car off the road onto the northerly berm of Laskey Road for a distance of over 200 feet and .somewhat less than 300 feet, or nearly a block.
While driving on the berm, he drove the car into a pe *56 destrian, Charles W. Steele, who was then and there walking westerly on snch northerly berm of Laskey Road to catch a bus on his way to work.
The Chevrolet was damaged on its right front side and fender.
A shred of cloth from Steele’s coat was left on the Chevrolet and was found the next day.
Steele’s injuries consisted of a fractured skull, a broken leg and a severed spinal cord, which caused his death.
The facts set forth above are either proved from direct evidence or inferred from other proved facts.
Considerable reliance seemed to be placed upon the testimony of Sergeant Ted Kwiatkowski, a technician in the Toledo police crime laboratory, who testified as an expert witness.
He testified that the body of the deceased had on a blue jacket similar to a navy jacket.
He testified further as follows:
“The car was first examined for blood stains, and no blood stains were detected. The car was also examined very carefully for the presence of any evidence that might link it to a traffic accident, and on the right side of the hood near the top there was a dull surface, the shiny surface of the paint had been worn off or ground off; there in that area I found several tiny fibers. Those fibers were put in an envelope and they were kept in my possession, and then they were taken to the laboratory to the police laboratory where they were examined and later compared with fibers taken from this jacket.
< i * # *
“* * # The two fibers were taken, one from the jacket, state’s exhibit 24, and' one of the fibers from the car were mounted on a microscopic slide, together on one slide, and examined at the same time to determine whether or not by examining the two together, they would still appear to be the same size, the same color, the same shape, and of the same composition, and they were.”
When asked, “What was your conclusion as to those two fibers?,” Sergeant Kwiatkowski answered, “I could find no difference between the two in composition or in size or in color. ’ ’
*57 The trial judge, after examining the fibers through a microscope, made the following statement for the record:
“Let the record show that the court examined the slide under the microscope.”
It will be noted from the record that the judges of both the Common Pleas Court and the Court of Appeals examined the exhibit slide, containing the fibers, under the microscope, in which examination the judges were assisted by the expert from the Toledo crime laboratory. ■
The defendant urges that it was error for the judges of the Court of Appeals to so examine an exhibit. We fail to see why it was not proper for the judges of the Court of Appeals to examine this exhibit. It is always proper for a reviewing court to view all the exhibits in a record, which include photographs and various other exhibits. The fact that it was neces-sary for an expert to demonstrate the use of the microscope in order for the judges of the Court of Appeals to view the exhibit does not affect the propriety of such examination.
Section 13459-1, G-eneral Code (Section 2953.02, Revised Code), provides that “the Supreme Court in a criminal case or- proceeding, except when its jurisdiction is original, shall not be required to determine as to the weight of the evidence.”
It has been established, as a general policy, that the Supreme Court will not determine as to the weight of the evidence.
This court may, however, examine the record with a view of determining whether the proper rules as to the weight of the evidence and degree of proof have been applied. See 3 Ohio Jurisprudence (2d), 787, Appellate Review, Section 808; Atkins v. State, 115 Ohio St., 542, 155 N. E., 189.
The burden rests upon the state to prove beyond a reasonable doubt every essential element of the offense charged. State v. Urbaytis, 156 Ohio St., 271, 102 N. E. (2d), 248; Scott v. State, 107 Ohio St., 475, 141 N. E., 19.
In sustaining the burden, probative evidence must be offered of every material element which is necessary to constitute the crime. State v. Winterich, 157 Ohio St., 414, 105 N. E. (2d), 857.
Direct and circumstantial evidence in the record in this case constitutes probative evidence that defendant was alone *58 and in possession of the car involved in this accident at the time, as indicated by various witnesses, that it occurred, to wit, 10:30 p. m.
The question before this court resolves itself to whether the defendant was operating a motor vehicle in violation of a valid statute, and whether the violation was the proximate cause of the death.
“To warrant a conviction of manslaughter, on account of the unintentional killing of a human being by the operation of a motor vehicle in violation of a valid statute, the violation of such statute must have been the proximate cause of the death.” Jackson v. State, 101 Ohio St., 152, 127 N. E., 870.
The evidence clearly indicates that Charles W. Steele, while walking westerly on the northerly berm of Laskey Road to catch a bus on his way to work, was struck by a car operated by the defendant. A shoe was found lying between two sets of tire tracks 40 feet from the body. The tire tracks ran down the northerly berm for a distance of over 200 feet. For a considerable part of that distance both sets of wheels were on the berm.
The state contends that the defendant was operating the automobile in violation of Section 6307-20, General Code (Section 4511.20, Revised Code), entitled “Reckless Operation of Vehicles.”
That section, which provides that “no person shall operate a vehicle, trackless trolley or streetcar without due regard for the safety and rights of pedestrians and drivers and occupants of all other vehicles, trackless trolleys and streetcars, so as to endanger the life, limb or property of any person while in the lawful use of the streets or highways, ” is a law applying to the use or regulation of traffic within the purview of the provision of Section 6307-18, General Code (Section 4511.18, Revised Code), that “whoever shall unlawfully and unintentionally kill another while engaged in the violation of any law of this state applying to the use or regulation of traffic, shall be guilty of manslaughter in the second degree.” See State v. Wells, 146 Ohio St., 131, 64 N. E. (2d), 593.
The term, “reckless operation,” is not found in the wording of Section 4511.20, but only in the title.
*59 Weygandt, C. J., in the opinion in Koppelman v. Springer, a Minor, 157 Ohio St., 117, 120, 104 N. E. (2d), 695, said:
“Reduced to its lowest terms, the requirement is simply that ‘no person shall operate a vehicle * * * without due regard for the safety and rights of pedestrians * * * and so as to endanger the life * * * of any person while in the lawful use of the * * highway. ’ This means merely that the defendant was obliged to operate his motor vehicle in the same manner as would a reasonably prudent person under similar circumstances.”
The facts in this case indicate that the trial judge was justified in determining that there was sufficient evidence to present questions for a jury as to whether the defendant was the operator of the vehicle in question, did not operate such motor vehicle in the same manner as would a reasonably prudent person under similar circumstances; and such operation was the proximate cause of the fatal injuries to the pedestrian.
The evidence in this case is largely circumstantial, but this court has held that “in a criminal prosecution the corpus delicti may be established by circumstantial evidence where the inference of the happening of the criminal act complained of is the only probable or natural explanation of the proven facts and circumstances.” See paragraph five of the syllabus of State v. Nevius, 147 Ohio St., 263, 71 N. E. (2d), 258.
In conclusion, Section 2953.02, Revised Code, provides that this court “in a criminal case or proceeding * * * shall not be required to determine as to the weight of the evidence,” and it has been established as a matter of policy that this court will not determine as to the weight of the evidence.
This court may, and frequently does, examine the record with the view of determining whether the proper rules as to the weight of the evidence and the degree of proof have been applied.
This case was tried before the judge as trier of the facts. There was no written opinion by either the Common Pleas Court or the Court of Appeals.
The judge of the Common Pleas Court as trier of the facts is presumed to have followed the law and to have applied the proper rules as to the weight of the evidence and the degree of proof.
*60 We conclude that, since the proof of every essential element . of the offense of manslaughter charged in the indictment met the required standard of proof in a criminal case, as enunciated herein, the trial judge properly overruled the defendant’s motion for discharge made at the close of the evidence.
The judgment of the Court of Appeals is, therefore, affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Bell and Taet, JJ., concur.
Hart and Stewart, JJ., concur in the syllabus but dissent from the judgment.