[Cite as *Cleveland v. K.C.*, 2018-Ohio-3567.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106364**

# CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

# K. C.

DEFENDANT-APPELLANT

## JUDGMENT:
REVERSED AND REMANDED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2016 CRB 017468

**BEFORE:** Kilbane, P.J., E.T. Gallagher, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** September 6, 2018

**ATTORNEYS FOR APPELLANT**

Mark A. Stanton
Cuyahoga County Public Defender
Erika B. Cunliffe
Frank Cavallo
Assistant Public Defenders
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Barbara Langhenry
Director of Law
City of Cleveland
Katherine Keefer
Assistant City Prosecutor
1200 Ontario Street, 8th Floor
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶1} Defendant-appellant, K.C., appeals from Cleveland Municipal Court's judgment convicting him of violating a protection order. For the reasons set forth below, we reverse and remand with instructions for the court to enter an order vacating K.C.'s conviction.

{¶2} In September 2016, K.C. was charged with the violation of a protection order. The complaint lists the date of the offense as September 15, 2016. K.C. pled not guilty to the charge, and the matter proceeded to trial before the bench. The following evidence was adduced at trial.

{¶3} On September 15, 2016, the victim, C.J., drove to a McDonald's on St. Clair Avenue in Cleveland, Ohio. C.J. testified that as she was exiting the drive-thru lane, a car was stopped in front of her. She honked her horn and went around the vehicle. As she drove by, she noticed two people in the car. C.J. identified K.C. as the driver and a female in the front passenger seat, later identified as Robin Jackson ("Jackson"). C.J. testified that K.C. is her ex-husband. They were married for 17 years before they divorced. C.J. testified that they have a long and troubled history together, and she has sought several protection orders against K.C. in the past.

{¶4} She testified that she turned left out of the McDonald's parking lot and proceeded onto St. Clair Avenue. C.J. further testified that K.C. exited McDonald's and proceeded to follow her. She sped up in an attempt to lose K.C. The two vehicles eventually separated but came back into contact with each other on C.J.'s street, with

K.C. blocking C.J.'s driveway. C.J. exited her vehicle, exchanged words with K.C., and then reentered her vehicle. After this, K.C. drove away. C.J. then went to the police station to make a report.

{¶5} C.J. further testified that she had filed several protection orders against K.C. in the past. Most recently, C.J. filed for an ex parte order on March 31, 2016, and a full hearing was held on May 25, 2016. K.C. did not attend either hearing. The full protection order was granted until May 24, 2021, which was admitted into evidence as "Exhibit 1."

{¶6} K.C. testified on his own behalf. He testified that he did not appear at the protection order hearing because he "never knew that it existed." He testified that he did not get notice of the hearing because he moved and did not receive notice at his new address.

{¶7} With regard to the incident in question, K.C. stated that he was driving Jackson, a family friend, to work. Jackson wanted to eat at McDonald's before work. K.C. entered the parking lot and discovered that the drive-thru line was too long. K.C. and Jackson decided to leave and try another restaurant on their route to Jackson's place of employment. While they were leaving, K.C. realized that C.J. was also in the McDonald's parking lot. Both cars turned left out of the parking lot and proceeded on St. Clair Avenue. The two cars drove alongside one another for a period of time before they separated. K.C. testified that C.J. was following his vehicle. Both vehicles encountered each other shortly thereafter on C.J.'s street, where C.J. yelled "something at

him." He then proceeded down C.J.'s street and drove Jackson to work. Afterwards, K.C. went to the police station, but did not make a formal report. He told the officer that he and C.J. have had "a crazy past" and "there's also a TPO on me."

{¶8} After the conclusion of trial, the court found K.C. guilty of violation of a protection order. The court sentenced K.C. to five years of active probation. As part of his probation, the court ordered K.C. to have no contact with the victim, no new cases, a substance abuse assessment with counseling, anger management classes, parenting classes, and random drug screens. Lastly, the court ordered K.C. to pay a $1,000 fine, $900 of which was suspended, plus costs, and 180 days in jail, which was also suspended.

{¶9} K.C. now appeals, raising the following two assignments of error for review:

### Assignment of Error One

The trial court erred by finding [K.C.] guilty of the single count of the indictment based upon insufficient evidence.

### Assignment of Error Two

The trial court erred by finding [K.C.] guilty of the single count of the indictment against the manifest weight of the evidence.

### Sufficiency of the Evidence

{¶10} In the first assignment of error, K.C. argues there was insufficient evidence to sustain his conviction of violating a protection order because the city did not introduce any evidence proving that he was served with the protection order.

{¶11} In *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶

113, the Ohio Supreme Court explained the standard for sufficiency of the evidence as follows:

> Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In reviewing such a challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶12} We are mindful that in considering the sufficiency of the evidence a certain perspective is required. *State v. Eley*, 56 Ohio St.2d 169, 172, 383 N.E.2d 132 (1978). "This court's examination of the record at trial is limited to a determination of whether there was evidence presented, 'which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *Id.*, quoting *Atkins v. State*, 115 Ohio St. 542, 546, 155 N.E. 189 (1926). It is the mind of the trier of fact, rather than a reviewing court, that must be convinced. *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982).

{¶13} Here, K.C. was convicted of the violation of a protection order as set forth in R.C. 2919.27, which provides that "[n]o person shall recklessly violate the terms of * * * [a] protection order issued or consent agreement approved pursuant to [R.C.] 3113.31[.]" *Id.* at (A)(1).

{¶14} In *State v. Smith*, 136 Ohio St.3d 1, 2013-Ohio-1698, 989 N.E.2d 972, the Ohio Supreme Court held that "the state must establish, beyond a reasonable doubt, that it

served the defendant with the [protection] order before the alleged violation." *Id.* at syllabus. The Supreme Court concluded:

> The requirements of R.C. 2903.214 are incorporated into R.C. 2919.27(A)(2). R.C. 2903.214(F)(1) requires delivery of the [protection order] to the respondent before a violation of R.C. 2919.27(A)(2) can be charged. The only manner by which the court is able to fulfill this mandate is to serve the [protection order]. Therefore, to sustain a conviction for a violation of a protection order pursuant to R.C. 2919.27(A)(2), the state must establish, beyond a reasonable doubt, that it served the defendant with the order before the alleged violation.

*Id.* at ¶ 28.

**{¶15}** Although the facts in the instant case differ slightly from the facts in *Smith* because Smith was charged with a violation of R.C. 2919.27(A)(2) rather than (A)(1), a similar requirement of delivery of the protection order is contained in R.C. 3113.31, which is incorporated by reference in R.C. 2919.27(A)(1). *Compare* R.C. 2903.214(F)(1) with 3113.31(F)(1). *See State v. Terrell*, 2d Dist. Clark No. 2013-CA-102, 2014-Ohio-4344. Consequently, in order to obtain a conviction in this case, the state must prove, beyond a reasonable doubt, that K.C. was served with a copy of the protection order he allegedly violated prior to September 15, 2016, the date on which he engaged in conduct that violated the protection order. *Smith*; *Terrell*; *State v. Verga*, 12th Dist. Warren No. CA2014-11-134, 2015-Ohio-2582; *State v. Johnson*, 6th Dist. Wood Nos. WD-13-008 and WD-13-009, 2014-Ohio-2435.

**{¶16}** A review of the record in the instant case is void of any evidence demonstrating that the protection order was served on K.C. prior to September 15, 2016.

Although the state contends that through circumstantial evidence K.C. had been served with the protection order, and the court ultimately found that K.C. knew of the protection order, we find otherwise. The state relies on K.C.'s testimony that he: (1) went to the police station to make a report and told the officer there was a protection order against him; (2) admitted to not showing up for the protection order hearings in the past; and (3) told Jackson they had to hurry up and get away from C.J. once he saw her at McDonald's. *Smith*, however, clearly makes service of a protection order an essential element that the state must prove to establish a violation of R.C. 2919.27.[1] Here, the city did not establish that K.C. was served with the protection order granted at the May 25, 2016 hearing.

{¶17} The protection order in the instant case lists K.C.'s address as "C/O Domestic Relations Court[,] 1 W. Lakeside Ave. RM 26, Cleveland, OH 44113[.]" Though the protection order instructs the clerk of courts to deliver a copy to K.C., there was no evidence introduced that he was actually served with a copy of the protection order at the Domestic Relations Court. In fact, the testimony presented by both the victim and K.C. was that he did not attend either hearing at court or any other day. Additionally, there was no testimony from the clerk of courts that the protection order was served on K.C. at any time prior to September 15, 2016.

---

[1]We note that "Senate Bill 7, which takes effect on September 27, 2017, adds a new subsection to Section 2919.27 that provides it is not necessary for the State to prove that a protection order was served on the defendant if it proves that the defendant was shown the protection order or that a judge, magistrate, or law enforcement officer informed the defendant that a protection order was issued." *State v. Meinke*, 2017-Ohio-7787, 97 N.E.3d 1184, ¶ 9 (9th Dist.), fn. 1. This amendment took effect roughly a month after the trial in the instant case.

**{¶18}** Based on the foregoing, the state did not present any evidence proving the necessary element of delivery of the protection order. As a result, there was insufficient evidence to sustain K.C.'s conviction for violating a protection order.

**{¶19}** Accordingly, the first assignment of error is sustained.

**{¶20}** In the second assignment of error, K.C. argues his conviction is against the manifest weight of the evidence. However, in light of our disposition of the first assignment of error, the remaining assignment of error is moot. App.R. 12.

**{¶21}** Judgment is reversed and the matter is remanded with instructions for the court to enter an order vacating K.C.'s conviction.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY EILEEN KILBANE, PRESIDING JUDGE
EILEEN T. GALLAGHER, J., and
PATRICIA A. BLACKMON, J., CONCUR